UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No.: **10-CV-80277-Cohn-Seltzer**

PACIFIC INSURANCE CO. LTD.,
a Connecticut corporation,

        Plaintiff,

vs.

AVIARA HOMEOWNERS ASSOCIATION,
INC., f/k/a BOCA RANCHO HOMEOWNERS
ASSOCIATION, INC., a Florida corporation,

        Defendant.

_____/

FILED by *VT* D.C.
ELECTRONIC

**Feb. 18, 2010**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

### COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, Pacific Insurance Co. Ltd., sues Aviara Homeowners Association, Inc., formerly known as Boca Rancho Homeowners Association, Inc., and alleges:

### Nature of the Action

1.    This is an action seeking declaratory relief pursuant to 28 U.S.C. § 2201.

### Parties

2.    Plaintiff, Pacific Insurance Co. Ltd. ("Pacific") is a corporation organized and existing under the laws of the State of Connecticut, with its principal place of business located in Boston, Massachusetts. Pacific is a surplus lines insurer in the State of Florida pursuant to the Florida Surplus Lines Law, §§ 626.913 - .937, Fla. Stat. (2009).

3.    Defendant, Aviara Homeowners Association, Inc., f/k/a Boca Rancho Homeowners Association, Inc. ("Boca Rancho"), is a corporation organized and existing under

the laws of the State of Florida, with its principal place of business located in Boca Raton, Florida.  On or about October 23, 2007, Aviara Homeowners Association, Inc. changed its name from Boca Rancho Homeowners, Association Inc. pursuant to documents filed with the Florida Division of Corporations.

**Jurisdiction and Venue**

4.      The Court has original jurisdiction over the subject matter of this civil action under 28 U.S.C. § 1332(a)(1) because: (a) Pacific and Boca Rancho are citizens of different states; and (b) the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a)(1) because Defendant Boca Rancho resides in this judicial district.

**General Allegations**

6.      The Boca Rancho condominium consists of 120 units housed with thirty buildings that each contain four units.

7.      In or about June 2005, Pacific issued Commercial Property Policy No. ZG0031384 to Boca Rancho Home Owners Association, Inc., ("Policy"). The Policy is a binding contract between Pacific and Boca Rancho Home Owners Association, Inc.  A true and correct copy of the Policy is attached hereto as Exhibit 1.

8.      The Policy provides, in pertinent part:

> **3.  Duties In The Event Of Loss Or Damage**
>
> a.  You must see that the following are done in the event of loss or damage to Covered Property:
>
> . . .
>
> (2) Give us prompt notice of the loss or damage. Include a description of the property involved.
>
> (3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

2

(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses to protect the Covered Property, for consideration and settlement of the claim. . . .

(5) At our request, give us complete inventories of the damaged and undamaged property.   Include quantities, costs, values and amount of loss claimed.

(6) As often as may be reasonably required, permit us to inspect the  property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make  copies  of  your books and records.

. . .

(8) Cooperate with us in the investigation or settlement of the claim.

(Policy § CP 00 17 00, at 8.)

9.     On October 24, 2005, Hurricane Wilma ("Wilma") swept through South Florida. A number of Boca Rancho buildings purportedly sustained damage as a result of the hurricane.

10.     On or about December 3, 2007, more than two years after Wilma and after it had completed certain repairs to the Property, Boca Rancho filed a Property Loss Notice with Pacific, identifying certain damage allegedly caused by Wilma.  This was Pacific's first notice of the claim.

11.     On or about December 12, 2007, Pacific, through its adjuster, acknowledged receipt of the claim and advised Boca Rancho that it was undertaking a complete investigation into the claim under a full reservation of rights.

12.     Pacific subsequently requested Boca Rancho to make available, for a February 15, 2008 inspection, documents including the homeowners association documents, bills for repairs completed, quotes for repairs completed, minutes from the homeowners' association monthly meetings, and any reports that the Boca Rancho property manager had provided to the

3

association since Wilma. However, Boca Rancho did not make these documents available to Pacific during the scheduled inspection and, instead, told Pacific that it would take additional time to obtain and copy the information.

13.     On or about March 3, 2008, Pacific, after not having received the requested documents, provided Boca Rancho with a Proof of Loss form. On or about March 19, 2008, Boca Rancho returned the sworn Proof of Loss form, which claimed a loss in the amount of $1,533,201.62. A true and correct copy of the sworn Proof of Loss form is attached hereto as Exhibit 2.

14.     On April 16, 2008, Pacific, through its adjuster, wrote to counsel for Boca Rancho, rejecting the sworn Proof of Loss and requesting an additional inspection of the premises, an examination under oath of Boca Rancho's representative, and additional documentation necessary to Pacific's claim investigation. A true and correct copy of the April 16, 2008 letter from Pacific is attached hereto as Exhibit 3.

15.     Neither Boca Rancho nor its counsel responded to the April 16, 2008 letter. On June 10, 2008, counsel for Pacific wrote to counsel for Boca Rancho, again requesting the additional documentation. Counsel for Boca Rancho subsequently responded that all documentation had already been produced.

16.     The examination under oath of Joseph Digilio, the then-president of Boca Rancho, took place on August 12, 2008. At his examination, Mr. Digilio provided testimony about certain documentation necessary to Pacific's claim investigation but did not bring such documentation with him.

17.     On September 3, 2008, counsel for Pacific wrote to counsel for Boca Rancho and requested the documents that Mr. Digilio had identified but had not brought to the examination

under oath, informing counsel for Boca Rancho that no further action could be taken on the claim until the documents had been produced. A true and correct copy of the September 3, 2008 letter is attached hereto as Exhibit 4. Counsel for Boca Rancho did not respond to the letter.

18.     On October 21, 2008, counsel for Pacific again wrote to counsel for Boca Rancho requesting the documents and informing counsel that no further action could be taken on the claim until the documents had been produced. A true and correct copy of the October 21, 2008 letter is attached hereto as Exhibit 5. Counsel for Boca Rancho did not respond to the letter.

19.     On December 15. 2008, counsel for Pacific once more wrote to counsel for Boca Rancho, enclosing copies of the September 3 and October 21 letters. The letter informed Boca Rancho of Pacific's presumption, based on the lack of response to the previous letters, that Boca Rancho no longer wished to pursue its claim under the Policy. The letter advised that if counsel for Boca Rancho did not respond within thirty days, Pacific would close its file on the matter. A true and correct copy of the December 15, 2008 letter is attached hereto as Exhibit 6.

20.     Shortly after the December 15, 2008 letter, counsel for Boca Rancho responded by producing a small package of documents that was largely unresponsive to Pacific's requests.

21.     On February 9, 2009, counsel for Pacific wrote to counsel for Boca Rancho and again requested the documents identified by Mr. Digilio at the examination under oath, the vast majority of which had not been produced in response to the December 15, 2008 letter. The letter specified the documents being requested. A true and correct copy of the February 9, 2009 letter is attached hereto as Exhibit 7.

22.     Several weeks later, counsel for Boca Rancho responded that he had produced everything Boca Rancho had, and threatened to file suit unless Pacific was interested in settling the matter.

23.     On April 23, 2009, counsel for Pacific wrote to counsel for Boca Rancho and informed him that the documents were essential to evaluating and adjusting Boca Rancho's claim, again requesting the documents previously specified.  Counsel for Boca Rancho did not respond to the letter.  A true and correct copy of the April 23, 2009 letter is attached hereto as Exhibit 8.

24.     On June 1, 2009, counsel for Pacific wrote to counsel for Boca Rancho and informed him that the documents were essential to evaluating and adjusting Boca Rancho's claim and again requested the documents previously specified.    A true and correct copy of the June 1, 2009 letter is attached hereto as Exhibit 9.

25.     On July 2, 2009, counsel for Boca Rancho wrote to counsel for Pacific and advised that Boca Rancho had obtained additional documents and that Pacific would have a "complete response" within two weeks. A copy of the July 2, 2009 letter is attached as Exhibit 10.

26.     On August 3, 2009, after having received none of the promised documents, counsel for Pacific wrote to counsel for Boca Rancho and asked to be advised as soon as possible when the response to Pacific's requests could be expected.  Counsel for Boca Rancho did not respond to the letter. A true and correct copy of the August 3, 2009 letter is attached hereto as Exhibit 11.

27.     On September 3, 2009, counsel for Pacific again wrote to counsel for Boca Rancho and indicated that, based on the lack of response, Pacific presumed that Boca Rancho no longer wished to pursue its claim under the Policy, and that if counsel for Boca Rancho did not respond within thirty days, Pacific would close its file on the matter. Counsel for Boca Rancho

did not respond to the letter. A true and correct copy of the September 3, 2009 letter is attached hereto as Exhibit 12.

28.     On October 28, 2009, new counsel for Boca Rancho wrote to counsel for Pacific, advising that the services of previous counsel had been terminated on September 17, 2009, and requested copies of all documents pertaining to the matter. A true and correct copy of the October 28, 2009 letter is attached hereto as Exhibit 13.

29.     Counsel for Pacific provided new counsel for Boca Rancho with, among other things, copies of the letters it had previously sent. On December 11, 2009, counsel for Boca Rancho sent to counsel for Pacific, via facsimile, a letter referencing certain invoices previously requested by Pacific as being enclosed, indicating that Boca Rancho had been unable to locate certain other invoices. Almost three weeks later, the original letter and a small package of documents was received by counsel for Pacific. A true and correct copy of the December 11, 2009 letter is attached hereto as Exhibit 14.

30.     On December 30, 2009, counsel for Boca Rancho again wrote to counsel for Pacific and advised that Cool Team did not have any copies of the invoices it had sent to Boca Rancho due to intervening water damage to some of its files, that was unable to provide any invoices from Island Builders Construction because that company had gone out of business, and that it had not yet received any of the records it had requested from Payton Roofing. A copy of the December 30, 2009 letter is attached hereto as Exhibit 15.

31.     The documents provided by Boca Rancho identified in Paragraph 29 above were again largely unresponsive to Pacific's earlier and continuing requests for information necessary for its claim investigation.

## COUNT I
## <u>Declaratory Judgment</u>

32.     Pacific repeats and realleges paragraphs 1 through 31 as if fully set forth herein.

33.     Boca Rancho was required under the terms of the Policy to provide prompt notice to Pacific of any loss that it claimed as a result of Wilma.

34.     Boca Rancho was further required under the terms of the Policy to cooperate with Pacific in the investigation of the claim, to keep a record of its expenses to protect its property for consideration and settlement of the claim, and to give complete inventories of damaged and undamaged property, including quantities, costs, values, and the amount of loss claimed.

35.     In breach of its contractual obligations under the Policy, Boca Rancho failed to provide timely notice of claim; failed to provide necessary documents; and failed to cooperate in Pacific's investigation of the claim. Boca Rancho's failure to comply with its contractual obligations as stated, has prejudiced Pacific in its ability to evaluate and adjust the claim made by Boca Rancho for its alleged Wilma damage.

36.     Consequently, there is an actual, substantial, and continuing controversy between the parties with respect to Pacific's coverage obligations as a result of Boca Rancho's non-compliance with the terms of the Policy.

37.     Pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 2202, this Court has the right and power to declare the rights and liabilities of the parties and to give such other and further relief as may be necessary.

WHEREFORE, Plaintiff, Pacific Insurance Co. Ltd., respectfully requests that the Court:

(a) take jurisdiction of this matter and determine and adjudicate the rights, obligations and liabilities of the parties under the Policy;

(b) find and declare that Boca Rancho committed material breaches of the Policy by failing to provide prompt notice of its loss; records requested by Pacific; and otherwise failing to cooperate in the claim investigation causing prejudice to Pacific and relieving Pacific of its contractual obligations;

(c) award Pacific such other and further relief as this Court may deem proper.

Dated:  February 18, 2010.

Respectfully submitted,

**HINSHAW & CULBERTSON LLP**

By: _____

Joseph R. Miele, Jr.
Florida Bar No.: 0426636
One East Broward Blvd., Suite 1010
Fort Lauderdale, Florida 33301
Phone:  (954) 467-7900
Fax:  (954) 467-1024
E-Mail: jmiele@hinshawlaw.com
*Attorneys for Plaintiff, Pacific*
*Insurance Company, Ltd.*

18439240v1 906181 71

# EXHIBIT "1"

# GENERAL COVER POLICY

**NO. ZG 0031384**

# PACIFIC INSURANCE COMPANY, LIMITED

**Hartford, Connecticut**

NEW
RENEWAL OF No.

Send Correspondence to: Pacific Insurance Company, Limited, c/o First State Management Group, Inc.
150 Federal Street, Boston, Massachusetts 02110-1753

**Insured's Name and Address:**     (No., Street, Town, County, State)
BOCA RANCHO HOMEOWNERS ASSN, INC.

c/o Community Association Serv

951 Broken Sound Parkway, Suite 250

Boca Raton, FL 33487

**Policy Period:**     (Mo. Day Yr.)
**From**   JUNE 15, 2005                    **to**   JUNE 15, 2006

$ ___SEE BELOW___       PREMIUM ___ —— ___     RATE $ ‾See Declarations‾   AMOUNT

In consideration of the stipulations herein named and of the premium above specified the Company does insure the insured named above, hereinafter called the insured, whose address is shown above, from the inception date shown above, at 12:01 A.M. (Standard Time), to the expiration date shown above, at 12:01 A.M., Standard Time at place of issuance, to an amount not exceeding the amount(s) above specified, on the following described property:

$ 45,760.

$ N/A          CERTIFIED ACTS OF TERRORISM (TRIA 2002) COVERAGE

$ 45,760.       TOTAL PREMIUM

$350. Inspection Fee

DO NOT ASSIGN ADJUSTER
IN CASE OF LOSS, REFER NOTICE IMMEDIATELY
TO CLAIMS MANAGER
FIRST STATE MANAGEMENT GROUP, INC.
150 Federal St., Boston, MA 02110-1753
C-225 (4/92)            617-526-7600

**Subject to Form No(s).** XP 00 55 03 05  SEE SCHEDULE OF FORMS AND ENDORSEMENTS      **attached hereto.**

This policy is made and accepted subject to the foregoing provisions and stipulations and those hereinafter stated, which are hereby made a part of this policy, together with such other provisions, stipulations and agreements as may be added hereto, as provided in this policy.

CERTIFIED COPY

ATLANTA, GEORGIA

*Lina B. De Now*

**Countersigned:** TBD/bjw   07/14/05

EXHIBIT
1

**COUNTERSIGNATURE**    HA:BRHOA:POL0002

(fm) 7-19-05-02

Form XP 00 31 05 05

POLICY NUMBER:   ZG 0031384

EFFECTIVE DATE:   JUNE 15, 2005

NAMED INSURED:   BOCA RANCHO HOMEOWNERS ASSN, INC.

## SCHEDULE OF FORMS AND ENDORSEMENTS

| | |
|---|---|
| ------------------ | SUPPLEMENTAL DECLARATIONS PAGE |
| IL 00 17 11 98 | COMMON POLICY CONDITIONS |
| CP 00 90 07 88 | COMMERCIAL PROPERTY CONDITIONS |
| CP 00 17 10 00 | CONDOMINIUM ASSOCIATION COVERAGE FORM |
| CP 10 30 10 00 | CAUSES OF LOSS - SPECIAL FORM |
| IL 09 35 08 98 | EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES |
| CP 01 25 06 95 | FLORIDA CHANGES |
| CP 01 91 06 95 | FLORIDA CHANGES - CONDOMINIUMS |
| IL 02 55 03 98 | FLORIDA CHANGES - CANCELLATION AND NONRENEWAL |
| IL 01 75 09 93 | FLORIDA CHANGES - LEGAL ACTION AGAINST US |
| ------------------ | SCHEDULE (JUNE 15, 2005) |
| PC-21 (5/96) | CO-INSURANCE CONTRACT |
| PS-1 (9/93) | SERVICE OF SUIT CLAUSE |
| PS-2 | SALVAGE AND RECOVERY CLAUSE |
| PM-3 (25%) | MINIMUM EARNED PREMIUM |
| C-142 | PER OCCURRENCE DEFINITION |
| C-184 (10/95) | VACANT OR UNOCCUPIED CONDITION OF COVERAGE |
| C-185 (10/95) | WIND EXCLUSION |
| C-196 | ELECTRONIC DATA ENDORSEMENT |
| C-197 (04/01) | WINDSTORM PERCENTAGE DEDUCTIBLE (Scheduled Values) |
| C-203 (02/02) | EXCLUSION - TERRORISM |
| C-207 (10/2002) | "FUNGUS" ENDORSEMENT |
| C-212 (01/03) | NOTICE TO POLICYHOLDERS - TERRORISM RISK INSURANCE ACT |
| C-217 (5/03) | AMENDATORY ENDORSEMENT:  TERRITORY, LIBERALIZATION CLAUSE |
| CP 12 10 11 85 | PROTECTIVE SAFEGUARDS |
| XP 99 11 11 93 | IMPORTANT NOTICE FOR FLORIDA POLICYHOLDERS |



CERTIFIED COPY

HA:BRHOA:POL0003

## SUPPLEMENTAL DECLARATIONS PAGE

**POLICY NO.**  ZG  0031384

**POLICY PERIOD**  JUNE 15, 2005          **TO**   JUNE 15, 2006

### NAMED INSURED

BOCA RANCHO HOMEOWNERS ASSN, INC.

c/o Community Association Serv

951 Broken Sound Parkway, Suite 250

Boca Raton, FL 33487

### DESCRIPTION OF PREMISES

| PREM NO.   BLDG. NO. | LOCATION, CONSTRUCTION AND OCCUPANCY |
|---|---|
| Scheduled | Various locations on Boca Rancho Drive, Boca Raton, FL 33428, fire resistive construction, occupied as condominiums. |

### COVERAGES PROVIDED INSURANCE AT THE DESCRIBED PREMISES APPLIES ONLY FOR COVERAGES FOR WHICH A LIMIT OF INSURANCE IS SHOWN.

| PREM NO.   BLDG. NO. | COVERAGE | LIMIT OF INSURANCE | COVERED CAUSES OF LOSS | COINSURANCE* | RATES |
|---|---|---|---|---|---|
| Scheduled | Building | See Schedule (6/15/05) | Special | 90% | .435 |

\* IF EXTRA EXPENSE COVERAGE LIMITS ON LOSS PAYMENT

### OPTIONAL COVERAGES APPLICABLE ONLY WHEN ENTRIES ARE MADE IN THE SCHEDULE BELOW

| PREM NO.   BLDG. NO. | AGREED VALUE EXPIRATION DATE | AMOUNT | REPLACEMENT COST(X) BUILDING | PERSONAL PROPERTY | INCLUDING STOCK |
|---|---|---|---|---|---|
| Scheduled | N/A | N/A | X | N/A | N/A |

| | * MONTHLY LIMIT OF INDEMNITY (Fraction) | *MAXIMUM PERIOD OF INDEMNITY (X) | *EXTENDED PERIOD OF INDEMNITY (Days) |
|---|---|---|---|
| | N/A | N/A | N/A |

*APPLIES TO BUSINESS INCOME ONLY

### MORTGAGE HOLDERS

| PREM NO.   BLDG. NO. | MORTGAGE HOLDER NAME AND MAILING ADDRESS |
|---|---|
| | N/A |

HA:BRHOA:POL0004

### DEDUCTIBLE

WIND, HAIL, WIND DRIVEN WATER, COLLAPSE DUE TO WIND, AND ANY OTHER WIND RELATED PERILS - See Form #C-197(04/01).
ALL OTHER PERILS - $5,000. Per Occurrence.

### FORMS APPLICABLE

| TO ALL COVERAGES | SEE SCHEDULE OF FORMS AND ENDORSEMENTS | |
|---|---|---|
| TO SPECIFIC PREMISES COVERAGES | | FORM NUMBER |
| PREM NO.   BLDG. NO. | COVERAGES | |



IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**HA:BRHOA:POL0005**

Copyright, Insurance Services Office, Inc., 1998

COMMERCIAL PROPERTY

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

**A. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;
2. The Covered Property;
3. Your interest in the Covered Property; or
4. A claim under this Coverage Part.

**B. CONTROL OF PROPERTY**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**C. INSURANCE UNDER TWO OR MORE COVERAGES**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**D. LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and
2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

**E. LIBERALIZATION**

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

**F. NO BENEFIT TO BAILEE**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**G. OTHER INSURANCE**

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.
2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**H. POLICY PERIOD, COVERAGE TERRITORY**

Under this Coverage Part:

1. We cover loss or damage commencing:
   a. During the policy period shown in the Declarations; and
   b. Within the coverage territory.
2. The coverage territory is:
   a. The United States of America (including its territories and possessions);
   b. Puerto Rico; and
   c. Canada.

HA:BRHOA:POL0006

Copyright, ISO Commercial Risk Services, Inc.,  1983, 1987         □

**I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

    a. Someone insured by this insurance;

    b. A business firm:

        (1) Owned or controlled by you; or

        (2) That owns or controls you; or

    c. Your tenant.

This will not restrict your insurance.

HA:BRHOA:POL0007

  Copyright, ISO Commercial Risk Services, Inc., 1983, 1987    CP 00 90 07 88    □

**COMMERCIAL PROPERTY**
CP 00 17 10 00

# CONDOMINIUM ASSOCIATION COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H. – Definitions.**

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1. Covered Property**

Covered Property, as used in this Coverage Part, means the type of property described in this Section, **A.1.,** and limited in **A.2.,** Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

**a. Building,** meaning the building or structure described in the Declarations, including:

  **(1)** Completed additions;

  **(2)** Fixtures, outside of individual units, including outdoor fixtures;

  **(3)** Permanently installed:

    **(a)** Machinery and

    **(b)** Equipment;

  **(4)** Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

    **(a)** Fire extinguishing equipment;

    **(b)** Outdoor furniture;

    **(c)** Floor coverings; and

    **(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering that are not contained within individual units;

  **(5)** If not covered by other insurance:

    **(a)** Additions under construction, alterations and repairs to the building or structure;

    **(b)** Materials, equipment, supplies, and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure; and

  **(6)** Any of the following types of property contained within a unit, regardless of ownership, if your Condominium Association Agreement requires you to insure it:

    **(a)** Fixtures, improvements and alterations that are a part of the building or structure; and

    **(b)** Appliances, such as those used for refrigerating, ventilating, cooking, dishwashing, laundering, security or housekeeping.

But Building does not include personal property owned by, used by or in the care, custody or control of a unit-owner except for personal property listed in Paragraph **A.1.a.(6)** above.

**b. Your Business Personal Property** located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises, consisting of the following:

  **(1)** Personal property owned by you or owned indivisibly by all unit-owners;

  **(2)** Your interest in the labor, materials or services furnished or arranged by you on personal property of others;

  **(3)** Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property of Others.

But Your Business Personal Property does not include personal property owned only by a unit-owner.

**HA:BRHOA:POL0008**

**c. Personal Property Of Others** that is:

    **(1)** In your care, custody or control; and

    **(2)** Located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

## 2. Property Not Covered

Covered Property does not include:

**a.** Accounts, bills, currency, deeds, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

**b.** Animals, unless owned by others and boarded by you;

**c.** Automobiles held for sale;

**d.** Bridges, roadways, walks, patios or other paved surfaces;

**e.** Contraband, or property in the course of illegal transportation or trade;

**f.** The cost of excavations, grading, back filling or filling;

**g.** Foundations of buildings, structures, machinery or boilers if their foundations are below:

    **(1)** The lowest basement floor; or

    **(2)** The surface of the ground if there is no basement.

**h.** Land (including land on which the property is located), water, growing crops or lawns;

**i.** Personal property while airborne or waterborne;

**j.** Bulkheads, pilings, piers, wharves or docks;

**k.** Property that is covered under this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**l.** Retaining walls that are not part of a building;

**m.** Underground pipes, flues or drains;

**n.** The cost to research, replace or restore the information on valuable papers and records, including those which exist on electronic or magnetic media, except as provided in the Coverage Extensions;

**o.** Vehicles or self-propelled machines (including aircraft or watercraft) that:

    **(1)** Are licensed for use on public roads; or

    **(2)** Are operated principally away from the described premises.

This paragraph does not apply to:

    **(a)** Vehicles or self-propelled machines or autos you manufacture or warehouse;

    **(b)** Vehicles or self-propelled machines, other than autos, you hold for sale;

    **(c)** Rowboats or canoes out of water at the described premises; or

    **(d)** Trailers, but only to the extent provided for in the Coverage Extension for Non-Owned Detached Trailers.

**p.** The following property while outside of buildings:

    **(1)** Grain, hay, straw or other crops; or

    **(2)** Fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs, or plants (other than "stock" of trees, shrubs or plants), all except as provided in the Coverage Extensions.

## 3. Covered Causes Of Loss

See applicable Causes of Loss Form as shown in the Declarations.

## 4. Additional Coverages

### a. Debris Removal

    **(1)** Subject to Paragraphs **(3)** and **(4)**, we will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

    **(2)** Debris Removal does not apply to costs to:

        **(a)** Extract "pollutants" from land or water; or

        **(b)** Remove, restore or replace polluted land or water.

    **(3)** Subject to the exceptions in Paragraph **(4)**, the following provisions apply:

        **(a)** The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

HA:BRHOA:POL0009

    (b) Subject to **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

**(4)** We will pay up to an additional $10,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

    (a) The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

    (b) The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if **(4)(a)** and/or **(4)(b)** apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $10,000.

**(5) Examples**

The following examples assume that there is no coinsurance penalty.

**Example #1**

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $ 500 |
| Amount of Loss | $ 50,000 |
| Amount of Loss Payable | $ 49,500 |
| | ($50,000 − $500) |
| Debris Removal Expense | $ 10,000 |
| Debris Removal Expense Payable | $ 10,000 |

($10,000 is 20% of $50,000)

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore, the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

**Example #2**

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $ 500 |
| Amount of Loss | $ 80,000 |
| Amount of Loss Payable | $ 79,500 |
| | ($80,000 − $500) |
| Debris Removal Expense | $ 30,000 |
| Debris Removal Expense Payable | |
|     Basic Amount | $ 10,500 |
|     Additional Amount | $ 10,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($30,000) exceeds 25% of the loss payable plus the deductible ($30,000 is 37.5% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $30,000 = $109,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $10,000, the maximum payable under Paragraph **(4)**. Thus the total payable for debris removal expense in this example is $20,500; $9,500 of the debris removal expense is not covered.

HA:BRHOA:POL0010

Copyright, Insurance Services Office, Inc., 1999

**b. Preservation Of Property**

If it is necessary for you to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

**d. Pollutant Clean Up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy.

**e. Increased Cost Of Construction**

**(1)** This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

**(3)** The ordinance or law referred to in **e.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

**(4)** Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

**(a)** You were required to comply with before the loss, even when the building was undamaged; and

**(b)** You failed to comply with.

**(5)** Under this Additional Coverage, we will not pay any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

**(6)** The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of: $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

HA:BRHOA:POL0011

          Copyright, Insurance Services Office, Inc., 1999          CP 00 17 10 00          ☐

**(7)** With respect to this Additional Coverage:

**(a)** We will not pay for the Increased Cost of Construction:

**(i)** Until the property is actually repaired or replaced, at the same or another premises; and

**(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

**(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

**(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance or Law Exclusion, to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment and Valuation Conditions, and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of an ordinance or law. The amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

**5. Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**a. Newly Acquired Or Constructed Property**

**(1) Buildings**

You may extend the insurance that applies to Building to apply to:

**(a)** Your new buildings while being built on the described premises; and

**(b)** Buildings you acquire at locations, other than the described premises, intended for:

**(i)** Similar use as the building described in the Declarations; or

**(ii)** Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

**(2) Your Business Personal Property**

**(a)** If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

**(i)** Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions;

**(ii)** Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations; or

**(iii)** Business personal property that you newly acquire, located at the described premises.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**(b)** This Extension does not apply to:

**(i)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

HA:BRHOA:POL0012

**(ii)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3) Period Of Coverage**

With respect to insurance on or at each newly acquired or constructed property, coverage will end when any of the following first occurs:

**(a)** This policy expires;

**(b)** 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

**(c)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records – Cost Of Research**

You may extend the insurance that applies to Your Business Personal Property to apply to your costs to research, replace or restore the lost information on lost or damaged valuable papers and records, including those which exist on electronic or magnetic media, for which duplicates do not exist. The most we will pay under this Extension is $2,500 at each described premises, unless a higher limit is shown in the Declarations.

**d. Property Off-Premises**

**(1)** You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

**(a)** Temporarily at a location you do not own, lease or operate;

**(b)** In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

**(c)** At any fair, trade show or exhibition.

**(2)** This Extension does not apply to property:

**(a)** In or on a vehicle; or

**(b)** In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

**(3)** The most we will pay for loss or damage under this Extension is $10,000.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), signs (other than signs attached to buildings), trees, shrubs and plants, (other than "stock" of trees, shrubs or plants), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

**f. Non-Owned Detached Trailers**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

**(a)** The trailer is used in your business;

HA:BRHOA:POL0013

Copyright, Insurance Services Office, Inc., 1999          CP 00 17 10 00    ☐

(b) The trailer is in your care, custody or control at the premises described in the Declarations; and

(c) You have a contractual responsibility to pay for loss or damage to the trailer.

(2) We will not pay for any loss or damage that occurs:

(a) While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

(b) During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

(3) The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

(4) This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

Each of these Extensions is additional insurance. The Additional Condition, Coinsurance, does not apply to these Extensions.

## B. Exclusions And Limitations

See applicable Causes of Loss Form as shown in the Declarations.

## C. Limits Of Insurance

The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs attached to buildings is $1,000 per sign in any one occurrence.

The limits applicable to the Coverage Extensions and the Fire Department Service Charge and Pollutant Clean Up and Removal Additional Coverages are in addition to the Limits of Insurance.

Payments under the Preservation of Property Additional Coverage will not increase the applicable Limit of Insurance.

## D. Deductible

In any one occurrence of loss or damage (hereinafter referred to as loss) we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss, and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

### Example No. 1:

(This example assumes there is no coinsurance penalty.)

| | | |
|---|---|---|
| Deductible: | $ | 250 |
| Limit of Insurance – Bldg. 1: | $ | 60,000 |
| Limit of Insurance – Bldg. 2: | $ | 80,000 |
| Loss to Bldg. 1: | $ | 60,100 |
| Loss to Bldg. 2: | $ | 90,000 |

The amount of loss to Bldg. 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Bldg. 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Bldg. 1:

```
  $ 60,100
–      250
  $ 59,850 Loss Payable – Bldg. 1
```

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Bldg. 2. Loss payable for Bldg. 2 is the Limit of Insurance of $80,000.

Total amount of loss payable: $59,850 + 80,000 = $139,850.

### Example No. 2:

(This example, too, assumes there is no coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example No. 1.

| | |
|---|---|
| Loss to Bldg. 1: | $70,000 |
| (exceeds Limit of Insurance plus Deductible) | |
| Loss to Bldg. 2: | $90,000 |
| (exceeds Limit of Insurance plus Deductible) | |
| Loss Payable – Bldg. 1: | $60,000 |
| (Limit of Insurance) | |
| Loss Payable – Bldg. 2: | $80,000 |
| (Limit of Insurance) | |

Total amount of loss payable: $140,000

## E. Loss Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

### 1. Abandonment

There can be no abandonment of any property to us.

HA:BRHOA:POL0014

## 2. Appraisal

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

## 3. Duties In The Event Of Loss Or Damage

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

## 4. Loss Payment

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

g. We will pay for covered loss or damage to Covered Property within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

   (1) We have reached agreement with you on the amount of loss; or

   (2) An appraisal award has been made.

   If you name an insurance trustee, we will adjust losses with you, but we will pay the insurance trustee. If we pay the trustee, the payments will satisfy your claims against us.

## 5. Recovered Property

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

## 6. Unit-Owner's Insurance

A unit-owner may have other insurance covering the same property as this insurance. This insurance is intended to be primary, and not to contribute with such other insurance.

## 7. Vacancy

a. **Description Of Terms**

   (1) As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

   (a) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

   (b) When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

      (i) Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

      (ii) Used by the building owner to conduct customary operations.

   (2) Buildings under construction or renovation are not considered vacant.

b. **Vacancy Provisions**

   If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

   (1) We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

      (a) Vandalism;

      (b) Sprinkler leakage, unless you have protected the system against freezing;

      (c) Building glass breakage;

      (d) Water damage;

      (e) Theft; or

      (f) Attempted theft.

   (2) With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

## 8. Valuation

We will determine the value of Covered Property in the event of loss or damage as follows:

a. At actual cash value as of the time of loss or damage, except as provided in **b., c.** and **d.** below.

b. If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

   The cost of building repairs or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property. However, the following property will be valued at the actual cash value even when attached to the building:

   (1) Awnings or floor coverings;

   (2) Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

   (3) Outdoor equipment or furniture.

c. Glass at the cost of replacement with safety glazing material if required by law.

d. Valuable Papers and Records, including those which exist on electronic or magnetic media (other than prepackaged software programs), at the cost of:

   (1) Blank materials for reproducing the records; and

   (2) Labor to transcribe or copy the records when there is a duplicate.

9. **Waiver Of Rights Of Recovery**

We waive our rights to recover payment from any unit-owner of the condominium that is shown in the Declarations.

## F. Additional Conditions

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

1. **Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies.

a. We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

(1) Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

(2) Divide the Limit of Insurance of the property by the figure determined in Step (1);

(3) Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step (2); and

(4) Subtract the deductible from the figure determined in Step (3).

We will pay the amount determined in Step (4) or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example No. 1 (Underinsurance):**

| When: | | | |
|---|---|---|---|
| | The value of the property is | $ | 250,000 |
| | The Coinsurance percentage for it is | | 80% |
| | The Limit of Insurance for it is | $ | 100,000 |
| | The Deductible is | $ | 250 |
| | The amount of loss is | $ | 40,000 |

Step (1):  $250,000 x 80% = $200,000 (the minimum amount of insurance to meet your Coinsurance requirements)

Step (2):  $100,000 ÷ $200,000 = .50

Step (3):  $40,000 x .50 = $20,000

Step (4):  $20,000 - $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example No. 2 (Adequate Insurance):**

| When: | | | |
|---|---|---|---|
| | The value of the property is | $ | 250,000 |
| | The Coinsurance percentage for it is | | 80% |
| | The Limit of Insurance for it is | $ | 200,000 |
| | The Deductible is | $ | 250 |
| | The amount of loss is | $ | 40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this Example is adequate and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

b. If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example No. 3:**

| When: | | | |
|---|---|---|---|
| | The value of property is: | | |
| | Bldg. at Location No. 1 | $ | 75,000 |
| | Bldg. at Location No. 2 | $ | 100,000 |
| | Personal Property at Location No. 2 | $ | 75,000 |
| | | $ | 250,000 |
| | The Coinsurance percentage for it is | | 90% |
| | The Limit of Insurance for Buildings and Personal Property at Location Nos. 1 and 2 is | $ | 180,000 |
| | The Deductible is | $ | 1,000 |
| | The amount of loss is: | | |
| | Bldg. at Location No. 2 | $ | 30,000 |
| | Personal Property at Location No. 2 | $ | 20,000 |
| | | $ | 50,000 |

Step (1):  $250,000 x 90% = $225,000 (the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step (2):  $180,000 ÷ $225,000 = .80

Step (3):  $50,000 x .80 = $40,000

Step (4):  $40,000 – $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

**HA:BRHOA:POL0017**

 Copyright, Insurance Services Office, Inc., 1999 CP 00 17 10 00   □

2. **Mortgageholders**

  a. The term mortgageholder includes trustee.

  b. We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

  c. The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

  d. If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

    (1) Pays any premium due under this Coverage Part at our request if you have failed to do so;

    (2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

    (3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

    All of the terms of this Coverage Part will then apply directly to the mortgageholder.

  e. If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

    (1) The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

    (2) The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

    At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

  f. If we cancel this policy, we will give written notice to the mortgageholder at least:

    (1) 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

    (2) 30 days before the effective date of cancellation if we cancel for any other reason.

  g. If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

G. **Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

1. **Agreed Value**

  a. The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

  b. If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

  c. The terms of this Optional Coverage apply only to loss or damage that occurs:

    (1) On or after the effective date of this Optional Coverage; and

    (2) Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

2. **Inflation Guard**

  a. The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

  b. The amount of increase will be:

    (1) The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

    (2) The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

    (3) The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**Example:**

| If: | The applicable Limit of Insurance is | $ | 100,000 |
|---|---|---|---|
| | The annual percentage increase is | | 8% |
| | The number of days since the beginning of the policy year (or last policy change) is | | 146 |
| | The amount of increase is $100,000 x .08 x 146 ÷ 365 = | $ | 3,200 |

Copyright, Insurance Services Office, Inc., 1999

HA:BRHOA:POL0018

**3. Replacement Cost**

**a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this Coverage Form.

**b.** This Optional Coverage does not apply to:

**(1)** Personal property of others;

**(2)** Contents of a residence;

**(3)** Manuscripts; or

**(4)** Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac.

Under the terms of this Replacement Cost Optional Coverage, personal property owned indivisibly by all unit owners, and the property covered under Paragraph **A.1.a.(6)** of this Coverage Form, are not considered to be the personal property of others.

**c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

**d.** We will not pay on a replacement cost basis for any loss or damage:

**(1)** Until the lost or damaged property is actually repaired or replaced; and

**(2)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

**e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1)**, **(2)** or **(3)**, subject to **f.** below:

**(1)** The Limit of Insurance applicable to the lost or damaged property;

**(2)** The cost to replace the lost or damaged property with other property:

**(a)** Of comparable material and quality; and

**(b)** Used for the same purpose; or

**(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

**f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

**4. Extension Of Replacement Cost To Personal Property Of Others**

**a.** If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

**b.** With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

**H. Definitions**

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

HA:BRHOA:POL0019

Copyright, Insurance Services Office, Inc., 1999

# CAUSES OF LOSS – SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning. Refer to Section **F.** – Definitions.

## A. Covered Causes Of Loss

When Special is shown in the Declarations, Covered Causes of Loss means Risks Of Direct Physical Loss unless the loss is:

1. Excluded in Section **B.,** Exclusions; or

2. Limited in Section **C.,** Limitations;

that follow.

## B. Exclusions

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

    **a. Ordinance Or Law**

    The enforcement of any ordinance or law:

    (1) Regulating the construction, use or repair of any property; or

    (2) Requiring the tearing down of any property, including the cost of removing its debris.

    This exclusion, Ordinance Or Law, applies whether the loss results from:

    (1) An ordinance or law that is enforced even if the property has not been damaged; or

    (2) The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

    **b. Earth Movement**

    (1) Earthquake, including any earth sinking, rising or shifting related to such event;

    (2) Landslide, including any earth sinking, rising or shifting related to such event;

    (3) Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

    (4) Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

    But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

    (5) Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

    Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

    (a) Airborne volcanic blast or airborne shock waves;

    (b) Ash, dust or particulate matter; or

    (c) Lava flow.

    All volcanic eruptions that occur within any 168 hour period will constitute a single occurrence.

    Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

    **c. Governmental Action**

    Seizure or destruction of property by order of governmental authority.

    But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**HA:BRHOA:POL0020**

 Copyright, Insurance Services Office, Inc., 1999

d. **Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

e. **Utility Services**

The failure of power or other utility service supplied to the described premises, however caused, if the failure occurs away from the described premises.

But if the failure of power or other utility service results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion does not apply to the Business Income coverage or to Extra Expense coverage. Instead, the Special Exclusion in Paragraph **B.4.a.(1)** applies to these coverages.

f. **War And Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

g. **Water**

(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

(2) Mudslide or mudflow;

(3) Water that backs up or overflows from a sewer, drain or sump; or

(4) Water under the ground surface pressing on, or flowing or seeping through:

(a) Foundations, walls, floors or paved surfaces;

(b) Basements, whether paved or not; or

(c) Doors, windows or other openings.

But if Water, as described in **g.(1)** through **g.(4)** above, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

Exclusions **B.1.a.** through **B.1.g.** apply whether or not the loss event results in widespread damage or affects a substantial area.

2. We will not pay for loss or damage caused by or resulting from any of the following:

a. Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires.

But if artificially generated electrical current results in fire, we will pay for the loss or damage caused by that fire.

b. Delay, loss of use or loss of market.

c. Smoke, vapor or gas from agricultural smudging or industrial operations.

d. (1) Wear and tear;

(2) Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3) Smog;

(4) Settling, cracking, shrinking or expansion;

(5) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

(6) Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

(7) The following causes of loss to personal property:

(a) Dampness or dryness of atmosphere;

(b) Changes in or extremes of temperature; or

(c) Marring or scratching.

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

HA:BRHOA:**POL0021**

Copyright, Insurance Services Office, Inc., 1999

**e.** Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**f.** Continuous or repeated seepage or leakage of water that occurs over a period of 14 days or more.

**g.** Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

    **(1)** You do your best to maintain heat in the building or structure; or

    **(2)** You drain the equipment and shut off the supply if the heat is not maintained.

**h.** Dishonest or criminal act by you, any of your partners, members, officers, managers, employees (including leased employees), directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

    **(1)** Acting alone or in collusion with others; or

    **(2)** Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees (including leased employees); but theft by employees (including leased employees) is not covered.

**i.** Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**j.** Rain, snow, ice or sleet to personal property in the open.

**k.** Collapse, except as provided below in the Additional Coverage for Collapse. But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

**l.** Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This Exclusion, **l.**, does not apply to damage to glass caused by chemicals applied to the glass.

**m.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**a.** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

**b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**c.** Faulty, inadequate or defective:

    **(1)** Planning, zoning, development, surveying, siting;

    **(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    **(3)** Materials used in repair, construction, renovation or remodeling; or

    **(4)** Maintenance;

of part or all of any property on or off the described premises.

**4. Special Exclusions**

The following provisions apply only to the specified Coverage Forms.

**a. Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, or Extra Expense Coverage Form**

We will not pay for:

    **(1)** Any loss caused directly or indirectly by the failure of power or other utility service supplied to the described premises, however caused, if the failure occurs outside of a covered building.

**HA:BRHOA:POL0022**

Copyright, Insurance Services Office, Inc., 1999

But if the failure of power or other utility service results in a Covered Cause of Loss, we will pay for the loss resulting from that Covered Cause of Loss.

**(2)** Any loss caused by or resulting from:

**(a)** Damage or destruction of "finished stock"; or

**(b)** The time required to reproduce "finished stock".

This exclusion does not apply to Extra Expense.

**(3)** Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

**(4)** Any increase of loss caused by or resulting from:

**(a)** Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

**(b)** Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

**(5)** Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

**(6)** Any other consequential loss.

**b. Leasehold Interest Coverage Form**

**(1)** Paragraph **B.1.a.** Ordinance Or Law, does not apply to insurance under this Coverage Form.

**(2)** We will not pay for any loss caused by:

**(a)** Your cancelling the lease;

**(b)** The suspension, lapse or cancellation of any license; or

**(c)** Any other consequential loss.

**c. Legal Liability Coverage Form**

**(1)** The following exclusions do not apply to insurance under this Coverage Form:

**(a)** Paragraph **B.1.a.,** Ordinance Or Law;

**(b)** Paragraph **B.1.c.,** Governmental Action;

**(c)** Paragraph **B.1.d.,** Nuclear Hazard;

**(d)** Paragraph **B.1.e.,** Utility Services; and

**(e)** Paragraph **B.1.f.,** War And Military Action.

**(2)** The following additional exclusions apply to insurance under this Coverage Form:

**(a) Contractual Liability**

We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

**(i)** Your assumption of liability was executed prior to the accident; and

**(ii)** The building is Covered Property under this Coverage Form.

**(b) Nuclear Hazard**

We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

**C. Limitations**

The following limitations apply to all policy forms and endorsements, unless otherwise stated.

**1.** We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

**a.** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

**HA:BRHOA:POL0023**

b. Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

c. The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

   (1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

   (2) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

d. Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

   However, this limitation does not apply to:

   (1) Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

   (2) Business Income coverage or Extra Expense coverage.

e. Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

f. Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

2. We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

a. Valuable papers and records, such as books of account, manuscripts, abstracts, drawings and card index systems, including those which exist on film, tape, disc, drum, cell or other data processing, recording or storage media. Valuable papers and records do not include prepackaged software programs.

b. Animals, and then only if they are killed or their destruction is made necessary.

c. Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

   (1) Glass; or

   (2) Containers of property held for sale.

d. Builders' machinery, tools and equipment owned by you or entrusted to you, provided such property is Covered Property.

   However, this limitation does not apply:

   (1) If the property is located on or within 100 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or

   (2) To Business Income coverage or to Extra Expense coverage.

3. The special limit shown for each category, a. through d., is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are:

a. $2,500 for furs, fur garments and garments trimmed with fur.

b. $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

c. $2,500 for patterns, dies, molds and forms.

d. $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

This limitation, C.3., does not apply to Business Income coverage or to Extra Expense coverage.

4. We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

a. Results in discharge of any substance from an automatic fire protection system; or

b. Is directly caused by freezing.

However, this limitation does not apply to Business Income coverage or to Extra Expense coverage.

HA:BRHOA:POL0024

## D. Additional Coverage – Collapse

The term Covered Cause of Loss includes the Additional Coverage – Collapse as described and limited in **D.1.** through **D.5.** below.

1. With respect to buildings:

   a. Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose;

   b. A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse;

   c. A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building;

   d. A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

2. We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if the collapse is caused by one or more of the following:

   a. The "specified causes of loss" or breakage of building glass, all only as insured against in this Coverage Part;

   b. Decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

   c. Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

   d. Weight of people or personal property;

   e. Weight of rain that collects on a roof;

   f. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation. However, if the collapse occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in **2.a.** through **2.e.**, we will pay for the loss or damage even if use of defective material or methods, in construction, remodeling or renovation, contributes to the collapse.

The criteria set forth in **1.a.** through **1.d.** do not limit the coverage otherwise provided under this Causes of Loss Form for the causes of loss listed in **2.a.**, **2.d.** and **2.e.**

3. With respect to the following property:

   a. Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

   b. Awnings, gutters and downspouts;

   c. Yard fixtures;

   d. Outdoor swimming pools;

   e. Fences;

   f. Piers, wharves and docks;

   g. Beach or diving platforms or appurtenances;

   h. Retaining walls; and

   i. Walks, roadways and other paved surfaces;

   if the collapse is caused by a cause of loss listed in **2.b.** through **2.f.**, we will pay for loss or damage to that property only if:

   a. Such loss or damage is a direct result of the collapse of a building insured under this Coverage Form; and

   b. The property is Covered Property under this Coverage Form.

4. If personal property abruptly falls down or caves in and such collapse is not the result of collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

   a. The collapse was caused by a Cause of Loss listed in **2.a.** through **2.f.** above;

   b. The personal property which collapses is inside a building; and

   c. The property which collapses is not of a kind listed in **3.** above, regardless of whether that kind of property is considered to be personal property or real property.

   The coverage stated in this Paragraph **4.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

   Collapse of personal property does not mean cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

5. This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

HA:BRHOA:POL0025

Copyright, Insurance Services Office, Inc., 1999 CP 10 30 10 00

## E. Additional Coverage Extensions

### 1. Property In Transit

This Extension applies only to your personal property to which this form applies.

**a.** You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

**b.** Loss or damage must be caused by or result from one of the following causes of loss:

**(1)** Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

**(2)** Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the road bed.

**(3)** Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

**c.** The most we will pay for loss or damage under this Extension is $5,000.

This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

### 2. Water Damage, Other Liquids, Powder Or Molten Material Damage

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

### 3. Glass

**a.** We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

**b.** We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

This Coverage Extension, **E.3.,** does not increase the Limit of Insurance.

## F. Definitions

"Specified Causes of Loss" means the following: Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

**1.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

**a.** The cost of filling sinkholes; or

**b.** Sinking or collapse of land into man-made underground cavities.

**2.** Falling objects does not include loss or damage to:

**a.** Personal property in the open; or

**b.** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

**3.** Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam.

**HA:BRHOA:POL0026**

IL 09 35 08 98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** We will not pay for loss ("loss") or damage caused directly or indirectly by the following. Such loss ("loss") or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss ("loss") or damage.

  **1.** The failure, malfunction or inadequacy of:

    **a.** Any of the following, whether belonging to any insured or to others:

      **(1)** Computer hardware, including micro-processors;

      **(2)** Computer application software;

      **(3)** Computer operating systems and related software;

      **(4)** Computer networks;

      **(5)** Microprocessors (computer chips) not part of any computer system; or

      **(6)** Any other computerized or electronic equipment or components; or

    **b.** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **A.1.a.** of this endorsement;

    due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

  **2.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **A.1.** of this endorsement.

**B.** If an excluded Cause of Loss as described in Paragraph **A.** of this endorsement results:

  **1.** In a Covered Cause of Loss under the Boiler And Machinery Coverage Part, the Commercial Crime Coverage Part, the Commercial Inland Marine Coverage Part or the Standard Property Policy; or

  **2.** Under the Commercial Property Coverage Part:

    **a.** In a "Specified Cause of Loss", or in elevator collision resulting from mechanical breakdown, under the Causes of Loss – Special Form; or

    **b.** In a Covered Cause of Loss under the Causes Of Loss – Basic Form or the Causes Of Loss – Broad Form;

  we will pay only for the loss ("loss") or damage caused by such "Specified Cause of Loss", elevator collision, or Covered Cause of Loss.

**C.** We will not pay for repair, replacement or modification of any items in Paragraphs **A.1.a.** and **A.1.b.** of this endorsement to correct any deficiencies or change any features.

**HA:BRHOA:POL0027**

Copyright, Insurance Services Office, Inc., 1998

POLICY NUMBER:                                                    **COMMERCIAL PROPERTY**
                                                                 **CP 01 25 06 95**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

**A.** When this endorsement is attached to the Standard Property Policy **CP 00 99** the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** The following provision applies when a Coinsurance percentage is shown in the Declarations:

Florida law states as follows:

Coinsurance contract: The rate charged in this policy is based upon the use of the coinsurance clause attached to this policy, with the consent of the Insured.

**C.** The following is added:

If loss or damage to Covered Property is caused by or results from Windstorm, the following exclusion applies in:

**1.** Broward County;

**2.** Dade County;

**3.** Martin County;

**4.** Monroe County;

**5.** Palm Beach County; and

**6.** All the areas east of the west bank of the Intra-Coastal Waterway in the Counties of:

    **a.** Indian River; and

    **b.** St. Lucie.

**Windstorm Exterior Paint and Waterproofing Exclusion**

We will not pay for loss or damage to:

**1.** Paint; or

**2.** Waterproofing material;

applied to the exterior of Buildings.

We will not include the value of paint or waterproofing material to determine:

    **a.** The amount of the Windstorm or Hail Deductible; or

    **b.** The value of Covered Property when applying the Coinsurance Condition.

**D.** The LOSS PAYMENT Condition dealing with the number of days within which we must pay for covered loss or damage is replaced by the following:

Provided you have complied with all the terms of this Coverage Part, we will pay for covered loss or damage:

    **(1)** Within 20 days after we receive the sworn proof of loss and reach written agreement with you; or

    **(2)** Within 30 days after we receive the sworn proof of loss and:

        **(a)** There is an entry of a final judgment; or

        **(b)** There is a filing of an appraisal award with us.

**E.** Sinkhole Collapse

**1.** Paragraph **A.10.,** SINKHOLE COLLAPSE, of the Causes of Loss - Basic Form and the Causes of Loss - Broad Form;

**2.** Paragraph **A.2.c.(8)** of COVERED CAUSES OF LOSS of the Mortgageholders Errors and Omissions Coverage Form; and

**3.** Paragraph **A.3.h.,** SINKHOLE COLLAPSE, of the Standard Property Policy

are replaced by the following:

**Sinkhole Collapse,** meaning loss or damage caused by the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or similar rock formations. This cause of loss does not include:

    **a.** The cost of filling sinkholes; or

    **b.** Sinking or collapse of land into man-made underground cavities.

**HA:BRHOA:POL0028**

**F.** Paragraph **F.1.** of DEFINITIONS of the Causes of Loss - Special Form is replaced by the following:

  **1.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or similar rock formations. This cause of loss does not include:

    **a.** The cost of filling sinkholes; or

    **b.** Sinking or collapse of land into man-made underground cavities.

**HA:BRHOA:POL0029**

Copyright, ISO Commercial Risk Services, Inc., 1994          **CP 01 25 06 95**  □

POLICY NUMBER.

COMMERCIAL PROPERTY
CP 01 91 06 95

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES - CONDOMINIUMS

This endorsement modifies insurance provided under the following:

CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
CONDOMINIUM ASSOCIATION CHANGES - STANDARD PROPERTY POLICY
CONDOMINIUM COMMERCIAL UNIT-OWNERS CHANGES - STANDARD PROPERTY POLICY

**SCHEDULE
CONDOMINIUM ADDITIONAL BUILDING PROPERTY**

| Prem. No. | Bldg. No. | Additional Covered Property |
|---|---|---|
| | | DOES NOT APPLY |

A. The following provisions apply to the CONDO-MINIUM COMMERCIAL UNIT-OWNERS insurance:

1. The following are added to YOUR BUSINESS PERSONAL PROPERTY:

   a. Floor coverings, wall coverings and ceiling coverings within individual units except as provided under PROPERTY NOT COVERED in paragraph A.2. below; and

   b. Electrical fixtures, appliances, air conditioner and heating equipment, water heaters and built-in cabinets which are located within an individual unit and which you are required to repair or replace, except as provided under PROPERTY NOT COVERED in paragraph A.2. below.

2. The following are added to PROPERTY NOT COVERED:

   a. Floor coverings, wall coverings and ceiling coverings within individual units, if, prior to October 1, 1986, your Condominium Association Agreement required the Association to insure it; and

   b. Electrical fixtures, appliances, air conditioner and heating equipment, water heaters and built-in cabinets which are located within an individual unit and which you are required to repair or replace, if, prior to October 1, 1986, your Condominium Association Agreement required the Association to insure it.

3. The following is added to the LOSS CONDITIONS section:

   **Waiver of Rights of Recovery**

   We waive our rights to recover payment from the association.

B. The following provision applies to the CONDO-MINIUM ASSOCIATION insurance:

BUILDING section is replaced by the following:

1. Building, meaning the building or structure described in the Declarations, including:

   a. Completed additions;

   b. Fixtures, outside of individual units, including outdoor fixtures;

   c. Permanently installed:

      (1) Machinery and

      (2) Equipment;

   d. Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

      (1) Fire extinguishing equipment;

      (2) Outdoor furniture;

      (3) Floor coverings; and

      (4) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering that are not contained within individual units;

SPECIMEN COPY HA:BRHOA:POL0030

IL 02 55 03 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES —
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
BUSINESSOWNERS POLICY
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART — FARM PROPERTY COVERAGE FORM
FARM COVERAGE PART — LIVESTOCK COVERAGE FORM
FARM COVERAGE PART — MOBILE AGRICULTURAL MACHINERY
AND EQUIPMENT COVERAGE FORM

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation For Policies In Effect 90 Days Or Less**

  **a.** If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

   **(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   **(2)** 20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

    **(a)** A material misstatement or misrepresentation; or

    **(b)** A failure to comply with underwriting requirements established by the insurer.

  **b.** We may not cancel:

   **(1)** On the basis of property insurance claims that are the result of an act of God, unless we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

   **(2)** On the basis of filing of claims for partial loss caused by sinkhole damage, regardless of whether this policy has been the subject of a sinkhole claim, or on the basis of the risk associated with the occurrence of such a claim. However, we may cancel this policy if:

    **(a)** The total of such property insurance claim payments for this policy exceeds the current policy limits of coverage for property damage; or

    **(b)** You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

**B.** The following is added to the **Cancellation** Common Policy Condition:

**7. Cancellation For Policies In Effect For More Than 90 Days**

  **a.** If this policy has been in effect for more than 90 days, we may cancel this policy only for one or more of the following reasons:

   **(1)** Nonpayment of premium;

   **(2)** The policy was obtained by a material misstatement;

   **(3)** There has been a failure to comply with underwriting requirements established by the insurer within 90 days of the effective date of coverage;

HA:BRHOA:POL0031

Copyright, Insurance Services Office, Inc., 1997

(4) There has been a substantial change in the risk covered by the policy;

(5) The cancellation is for all insureds under such policies for a given class of insureds;

(6) On the basis of property insurance claims that are the result of an act of God, if we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

(7) On the basis of filing of claims for partial loss caused by sinkhole damage, or on the basis of the risk associated with the occurrence of such a claim, if:

(a) The total of such property insurance claim payments for this policy exceeds the current policy limits of coverage for property damage; or

(b) You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

b. If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the specific reasons for cancellation, at least:

(1) 10 days before the effective date of cancellation if cancellation is for nonpayment of premium; or

(2) 45 days before the effective date of cancellation if:

(a) Cancellation is for one or more of the reasons stated in **7.a.(2)** through **7.a.(7)** above; and

(b) This policy does not cover a residential structure or its contents; or

(3) 90 days before the effective date of cancellation if:

(a) Cancellation is for one or more of the reasons stated in **7.a.(2)** through **7.a.(7)** above; and

(b) This policy covers a residential structure or its contents.

**C.** The following is added:

**NONRENEWAL**

1. If we decide not to renew this policy we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the specific reason for nonrenewal, at least:

a. 90 days prior to the expiration of the policy if this policy covers a residential structure or its contents; or

b. 45 days prior to the expiration of the policy for all other policies.

2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

3. We may not refuse to renew this policy:

a. On the basis of property insurance claims that are the result of an act of God, unless we can demonstrate, by claims frequency or otherwise, that you have failed to take action reasonably necessary as requested by us to prevent recurrence of damage to the insured property; or

b. On the basis of filing of claims for partial loss caused by sinkhole damage, regardless of whether this policy has been the subject of a sinkhole claim, or on the basis of the risk associated with the occurrence of such a claim. However, we may refuse to renew this policy if:

(1) The total of such property insurance claim payments for this policy exceeds the current policy limits of coverage for property damage; or

(2) You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based.

**HA:BRHOA:POL0032**

 Copyright, Insurance Services Office, Inc., 1997 **IL 02 55 03 98** □

IL 01 75 09 93

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FLORIDA CHANGES - LEGAL ACTION AGAINST US

This endorsement modifies insurance provided under the following:

> BOILER AND MACHINERY COVERAGE PART
> BUSINESSOWNERS POLICY
> COMMERCIAL INLAND MARINE COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> FARM COVERAGE PART

The following replaces the second paragraph of the Legal Action Against Us condition:

LEGAL ACTION AGAINST US

Legal action against us involving direct physical loss or damage to property must be brought within 5 years from the date the loss occurs.

Copyright, Insurance Services Office, Inc., 1993
Copyright, ISO Commercial Risk Services, Inc., 1993

HA:BRHOA:POL0033

BOCA RANCHO HOMEOWNERS ASSN, INC.

SCHEDULE OF LOCATIONS AND LIMITS OF LIABILITY

JUNE 15, 2005

| | Location | Building No. | Covering | Limit |
|---|---|---|---|---|
| 1. | 22208 Boca Rancho Drive<br>Boca Raton, FL 33428 | 1 | Building | $344,355. |
| | 22212 Boca Rancho Drive<br>Boca Raton, FL 33428 | 2 | Building | $344,355. |
| | 22216 Boca Rancho Drive<br>Boca Raton, FL 33428 | 3 | Building | $344,355. |
| | 22220 Boca Rancho Drive<br>Boca Raton, FL 33428 | 4 | Building | $344,355. |
| | 22224 Boca Rancho Drive<br>Boca Raton, FL 33428 | 5 | Building | $344,355. |
| | 22228 Boca Rancho Drive<br>Boca Raton, FL 33428 | 6 | Building | $344,355. |
| | 22232 Boca Rancho Drive<br>Boca Raton, FL 33428 | 7 | Building | $344,355. |
| | 22236 Boca Rancho Drive<br>Boca Raton, FL 33428 | 8 | Building | $344,355. |
| | 22240 Boca Rancho Drive<br>Boca Raton, FL 33428 | 9 | Building | $344,355. |
| | 22244 Boca Rancho Drive<br>Boca Raton, FL 33428 | 10 | Building | $344,355. |
| | 22246 Boca Rancho Drive<br>Boca Raton, FL 33428 | 11 | Building | $344,355. |
| | 22250 Boca Rancho Drive<br>Boca Raton, FL 33428 | 12 | Building | $344,355. |



CERTIFIED COPY

HA:BRHOA:POL0034

BOCA RANCHO HOMEOWNERS ASSN, INC.

SCHEDULE OF LOCATIONS AND LIMITS OF LIABILITY (CON'T.)

JUNE 15, 2005

|  | Location | Building No. | Covering | Limit |
|---|---|---|---|---|
| 1. | 22160 Boca Rancho Drive<br>Boca Raton, FL 33428 | 13 | Building | $344,355. |
|  | 22161 Boca Rancho Drive<br>Boca Raton, FL 33428 | 14 | Building | $344,355. |
|  | 22164 Boca Rancho Drive<br>Boca Raton, FL 33428 | 15 | Building | $344,355. |
|  | 22168 Boca Rancho Drive<br>Boca Raton, FL 33428 | 16 | Building | $344,355. |
|  | 22169 Boca Rancho Drive<br>Boca Raton, FL 33428 | 17 | Building | $344,355. |
|  | 22172 Boca Rancho Drive<br>Boca Raton, FL 33428 | 18 | Building | $344,355. |
|  | 22176 Boca Rancho Drive<br>Boca Raton, FL 33428 | 19 | Building | $344,355. |
|  | 22180 Boca Rancho Drive<br>Boca Raton, FL 33428 | 20 | Building | $344,355. |
|  | 22181 Boca Rancho Drive<br>Boca Raton, FL 33428 | 21 | Building | $344,355. |
|  | 22185 Boca Rancho Drive<br>Boca Raton, FL 33428 | 22 | Building | $344,355. |
|  | 22184 Boca Rancho Drive<br>Boca Raton, FL 33428 | 23 | Building | $344,355. |
|  | 22188 Boca Rancho Drive<br>Boca Raton, FL 33428 | 24 | Building | $344,355. |


CERTIFIED COPY

HA:BRHOA:POL0035

BOCA RANCHO HOMEOWNERS ASSN, INC.

SCHEDULE OF LOCATIONS AND LIMITS OF LIABILITY (CON'T.)

JUNE 15, 2005

| | Location | Building No. | Covering | Limit |
|---|---|---|---|---|
| 1. | 22192 Boca Rancho Drive<br>Boca Raton, FL 33428 | 25 | Building | $344,355. |
| | 22196 Boca Rancho Drive<br>Boca Raton, FL 33428 | 26 | Building | $344,355. |
| | 22197 Boca Rancho Drive<br>Boca Raton, FL 33428 | 27 | Building | $344,355. |
| | 22200 Boca Rancho Drive<br>Boca Raton, FL 33428 | 28 | Building | $344,355. |
| | 22204 Boca Rancho Drive<br>Boca Raton, FL 33428 | 29 | Building | $344,355. |
| | 22205 Boca Rancho Drive<br>Boca Raton, FL 33428 | 30 | Building | $344,355. |
| | | | Cabana Building | $51,000. |
| | | | Swimming Pool | $38,000. |
| | | | Pool Equipment | $10,000. |
| | | | Patio | $19,000. |
| | | | Patio Fencing | $4,000. |
| | | | Perimeter Fencing | $25,000. |
| | | | Gazebo | $7,000. |
| | | | Trash Enclosures (10) - $2,100. Each | $21,000. |
| | | | Identification Signs (2) - $4,500. Each | $9,000. |
| | | | Area Lighting | $5,000. |



CERTIFIED COPY

HA:BRHOA:POL0036

## CO-INSURANCE CONTRACT

"Co-insurance contract; "the rate charged in this policy is based upon the use of co-insurance clause attached to this policy with the consent of the insured," in addition, the statute requires that the co-insurance clause is clearly identifiable and the rate for the insurance with or without the co-insurance clause is furnished to the insured upon his request."

PC-21 (5/96)

HA:BRHOA:POL0037

Service of Suit Clause

It is agreed that in the event of the failure of this Company to pay any amount claimed to be due hereunder, this Company, at the request of the Insured, will submit to the jurisdiction of any Court of Competent Jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court, however, this Company specifically reserves the right to remove any suit brought under this policy to a Federal Court of the United States.

It is further agreed that service of process in such suit may be made upon the highest one in authority bearing the title "Commissioner", "Director", or "Superintendent" of Insurance of the state or commonwealth wherein the property covered by this policy is located, and that in any suit instituted against it upon this contract this Company will abide by the final decision of such Court or any Appellate Court in the event of an appeal.   The one in authority bearing the title "Commissioner", "Director", or "Superintendent" of Insurance of the state or commonwealth wherein the property covered by this policy is located is hereby authorized and directed to accept service of process on behalf of this Company in any such suit and/or upon the Insured's request to give a written undertaking to the Insured that they will enter a general appearance upon this Company's behalf in the event such a suit shall be instituted.

PS-1 (9/93)

## Salvage and Recovery Clause

All salvages, recoveries and payments recovered or received subsequent to a loss settlement under this policy shall be applied as if recovered or received prior to the said settlement and all necessary adjustments shall be made by the parties hereto.

PS-2

HA:BRHOA:POL0039

## MINIMUM EARNED PREMIUM

It is hereby understood and agreed that this policy is written subject to a _____25_ % minimum earned premium regardless of time in force.

HA:BRHOA:POL0040

PM-3



PER OCCURRENCE DEFINITION:

It is hereby understood and agreed that the following Special Terms and Conditions apply to this policy:

(1)     The Limit of Liability or Amount of Insurance shown on the face of this policy is a Limit or Amount per occurrence. Notwithstanding anything to the contrary contained herein, in no event shall the Liability of this company exceed this Limit or Amount in one disaster, casualty, or event, irrespective of the number of Locations involved.

(2)     The premium for this policy is based upon the Statement of Values on file with the company, or attached to this policy. In the event of loss hereunder, liability of the company shall be limited to the least of the following:

        A.     The actual adjustment amount of loss, less applicable deductible(s).

        B.     The total stated value for the property involved, as shown on the latest Statement of Values on file with the company, less applicable deductible(s).

        C.     The Limit of Liability or Amount of Insurance shown on the face of this policy or endorsed onto this policy.

OCCURRENCE DEFINED:

As used herein, "Occurrence" shall mean any one loss, disaster, or casualty or series of losses, disasters, or casualties arising out of one event.

C-142

HA:BRHOA:POL0041

## VACANT OR UNOCCUPIED
### Condition of Coverage

As a condition of this insurance, the insured is required to secure and lock all exterior doors, windows and any other openings for any unoccupied or vacant areas of building(s) scheduled.

We will NOT pay for loss or damage caused by or resulting from covered perils if, prior to loss, the insured:

      a. Knew of any suspension or impairment of such protection and failed to notify the insurance company of that fact; or

      b. Failed to maintain such protection, for unoccupied or vacant areas of building(s), as required above.

Failure to comply with this condition of coverage shall suspend all coverage under this policy, at the building(s) which are not in compliance, until such time as the protection of the premises meets the required conditions stated above.

C-184 (10/95)

## WIND EXCLUSION

It is hereby understood and agreed that the perils of "Wind, Hail, Wind Driven Water, Collapse due to Wind, and any other Wind related perils" are excluded from coverage under this policy.

AS RESPECTS ANY LOCATION WITH WOOD JOISTED ROOF CONSTRUCTION.

C-185 (10/95)

CERTIFIED COPY

HA:BRHOA:POL0043

## Electronic Data Endorsement

Notwithstanding any provision to the contrary within the policy or any endorsement thereto, it is understood and agreed that this policy does not insure against loss or damage caused by, resulting from, contributed to, or aggravated by:

1. alteration, manipulation or destruction of computer media and data, the addition of a virus, destructive code or similar instruction that disrupts the normal operation of computer equipment or results in the loss of use or physical damage to computer equipment or computer media and data; such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in sequence to the loss or damage;

2. denial of service; including but not limited to unauthorized direction of a high volume of messages or inquiries to a web site or e-mail destinations, effectively denying, interrupting or limiting legitimate access; such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in sequence to the loss or damage;

3. transfer of property caused by, resulting from, or arising out of unauthorized instructions transmitted by a computer;

4. financial loss or any other loss or damage due to unauthorized viewing, copying or use of any data (including proprietary or confidential information) by any person, even if such activity is characterized as theft.

C-196  (2/2006)

HA:BRHOA:POL0044

## WINDSTORM PERCENTAGE DEDUCTIBLE
### Scheduled Values Listed on the Declaration Page or on File with the Company

The following Deductible will apply as respects loss or damage caused by wind, hail, wind driven water, collapse due to wind and any other wind related peril:

### SCHEDULE OF DEDUCTIBLES

| | |
|---|---|
| 5% | of the total scheduled insured values of the item(s) insured that has sustained loss or damage |
| $100,000. | Minimum per occurrence |

The sum we will subtract from each separate item insured will be a percentage of the item's value or the minimum dollar deductible amount, whichever is greater.  If a covered item is not included on the schedule of values, the percentage deductible will apply to the value of that item at the time and place of loss subject to the minimum per occurrence amount, if shown above. The applicable percentage is shown in the above Schedule of Deductibles.  The windstorm percentage deductible indicated above shall apply to each separate item insured and as listed below.

The percentage deductible applies separately to:

a.  Each building or structure;
b.  The contents of each building or structure;
c.  Personal Property in the open;
d.  Business Income/Extra Expense and/or Rental Value;
e.  All other covered items

## CALCULATION OF THE PERCENTAGE:

In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to the percentage, shown above, of the scheduled value(s) of the property that has sustained loss or damage.

## EXAMPLES OF DEDUCTIBLE APPLICATION:

BUILDING
The scheduled value of the building is $1,000,000 and the windstorm percentage deductible is 2%.

$1,000,000 x 2% = $20,000 deductible

PERSONAL PROPERTY
The scheduled value of the personal property is $500,000 and the windstorm percentage deductible is 2%.

$500,000 x 2% = $10,000 deductible

CERTIFIED COPY

BUSINESS INCOME, EXTRA EXPENSE, RENTAL INCOME

Business Income, Extra Expense:
The scheduled value of Business Income/Extra Expense is $600,000 and scheduled deductible is 2%.

$600,000 x 2% = $12,000 deductible

Rental Value:
The scheduled value of Rental Value is $500,000 and scheduled deductible is 2%.

$500,000 x 2% = $10,000 deductible



HA:BRHOA:POL0046

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – TERRORISM

**A.** We will not pay for any loss ("loss") or damage caused directly or indirectly by, resulting from or in connection with or arising out of "terrorism". Such loss ("loss") or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss ("loss") or damage.

But if "terrorism" results in fire, this exclusion will not apply to loss ("loss") or damage caused by that fire to Covered Property located in a state where a statute provides that coverage for the peril of fire is required to be provided pursuant to a statutorily prescribed standard fire insurance policy.

However, this exception for fire applies only to direct loss ("loss") or damage by fire to Covered Property, and does not apply to insurance provided under any of the following coverages:

**1.** Business Interruption;

**2.** Business Income;

**3.** Extra Expense;

**4.** Legal Liability;

**5.** Leasehold Interest; or

**6.** Loss of Rents.

**B.** This insurance does not apply to:
    **1.** Any injury or damage to persons or property; or
    **2.** Any damages, judgments, loss, costs or expenses;

caused directly or indirectly by, resulting from or in connection with or arising out of "terrorism".

**C.** As used in **A.** and **B.** above, "terrorism" means any act against any person, tangible or intangible property, or infrastructure that:
    **1.** Is determined by governmental authority to be an act of terrorism; or
    **2.** We reasonably determine to be:
        **a.** In furtherance of political, religious, ideological or cultural objectives; and
        **b.** Committed for the purpose of:
            **(1)** Intimidating, coercing or punishing a civilian population or a segment thereof or its government;
            **(2)** Influencing the policy of a government by intimidation or coercion; or
            **(3)** Disrupting any segment of a national economy.
    **3.** Terrorism does not include "vandalism".
    "Vandalism" means willful and malicious damage to or destruction of property which is not committed for the purpose of:
            **(1)** Intimidating, coercing or punishing a civilian population or a segment thereof or its government;
            **(2)** Influencing the policy of a government by intimidation or coercion; or
            **(3)** Disrupting any segment of a national economy.

As used in this Endorsement the word act includes any preparation for or threat or attempt to commit such act.

**HA:BRHOA:POL0047**

# "Fungus" Endorsement

The Policy to which this endorsement is attached is amended as follows:

1. The provisions of this endorsement supersede any contradictory provisions found in any other form or endorsement attached to this policy.

2. The policy is amended to add the following loss exclusions:

   This policy does not insure loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:

   (a)   Presence, growth, proliferation, spread or any activity of "fungus", mold, mildew, wet rot, dry rot, bacteria or virus. This exclusion does not apply if "fungus", mold, mildew, wet rot, dry rot, bacteria or virus results from fire, lightning, or flood, if flood coverage applies, and if all reasonable means were used to save and preserve the property from further damage at the time of and after the loss occurrence.

   (b)   Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

3. The policy is amended to add the following additional coverage:

   **Additional Coverage for Fungus, Mold, Wet Rot, Dry Rot, Bacteria and Virus.**

   A.   Loss or Damage associated with Fungus, Mold, Mildew, Wet or Dry Rot, Bacteria or Virus is covered only if all reasonable means were used to save and preserve the property from further damage at the time of and after the occurrence and only if such damage was the result of one or more of the following causes that are not otherwise excluded by this policy and that occurred during the policy period:

   (1.)   explosion,
   (2.)   windstorm or hail,
   (3.)   smoke,
   (4.)   aircraft or vehicles,
   (5.)   riot or civil commotion,
   (6.)   vandalism,
   (7.)   leakage from fire extinguishing equipment,
   (8.)   sinkhole collapse,
   (9.)   volcanic action,
   (10.)   falling objects,
   (11.)   weight of snow, ice or sleet,
   (12.)   water damage.

C-207 (10/2002)

HA:BRHOA:POL0048

B.   Coverage for loss associated with fungus, mold, mildew, wet or dry rot, bacteria or virus is limited to $15,000.00. Regardless of the number of claims, this limit is the most that will be paid for the total of all loss or damage arising out of all occurrences which take place in a 12-month period (starting with the beginning of the present annual policy period.) With respect to a particular occurrence of loss which results in fungus, mold, mildew, wet or dry rot, bacteria or virus, we will not pay more than a total of $15,000.00 even if the fungus, mold, wet or dry rot, bacteria or virus continues to be present or active, or recurs, in a later policy period.

4.   If the Ordinance or Law Coverage is included in this policy, the following exclusions apply:

This policy does not insure any cost associated with or loss arising out of:

1.   Enforcement of any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to the presence, growth, proliferation, spread or any activity of fungus, mold, mildew, wet or dry rot, bacteria or virus; or

2.   Enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or any way respond to or access the effects of fungus, mold, mildew, wet or dry rot, bacteria or virus.

5.   Definitions:

"**Fungus**" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

"**Sinkhole collapse**" means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include the cost of filling sinkholes or sinking or collapse of land into manmade underground cavities.

"**Falling objects**" does not include loss or damage to personal property in the open or the interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

"**Water damage**" means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system or its related equipment and parts), that is located on the described premises and contains water or steam.

**All other terms and conditions remain unchanged.**

**HA:BRHOA:POL0049**

Insured:  BOCA RANCHO HOMEOWNERS ASSN,        Effective Date of this Notice:  JUNE 15, 2005
INC.
Policy #:  ZG 0031384

## NOTICE TO POLICYHOLDERS
## TERRORISM RISK INSURANCE ACT

We have previously notified you that under the Terrorism Risk Insurance Act of 2002, effective November 26, 2002, we must make terrorism coverage available in the policies we offer.  At that time we advised you that the premium for such terrorism coverage would be $2,288.  As a result of your decision to reject terrorism coverage, we will not charge your policy for terrorism coverage.

Any terrorism coverage made available in our policies is partially reinsured by the United States of America under a formula established by federal law.  Under this formula, the United States will pay 90% of covered terrorism losses exceeding a statutorily established deductible paid by insurers until such time as insured losses under the program reach $100 billion.  If that occurs, Congress will determine the procedures for, and the source of, any payments for losses in excess of $100 billion.

By declining to purchase the offered terrorism coverage, you have authorized the attachment of a terrorism exclusion to your policy and/or binder.  An exclusion will now form a part of and is included with your policy or binder.

Questions regarding your election can be directed to your agent or broker.

C-212 (01/03)

## AMENDATORY ENDORSEMENT:
## TERRITORY, LIBERALIZATION CLAUSE

It is understood and agreed Item E., LIBERALIZATION, of Form #CP 00 90 07 88, COMMERCIAL PROPERTY CONDITIONS, is null and void.

It is further agreed Item H. POLICY PERIOD, COVERAGE TERRITORY, of Form #CP 00 90 07 88, COMMERCIAL PROPERTY CONDITIONS, is amended to read as follows:

    H.   POLICY PERIOD, COVERAGE TERRITORY

        Under this Coverage Part:

        1.   We cover loss or damage commencing:

                a.   During the policy period shown in the Declarations; and

                b.   Within the coverage territory.

        2   The coverage territory is the continental United States and the District of Columbia.

C-217 (5/03)

HA:BRHOA:POL0051

POLICY NUMBER:  ZG 0031384

COMMERCIAL PROPERTY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PROTECTIVE SAFEGUARDS

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

## SCHEDULE*

| Prem. No. | Bldg. No. | Protective Safeguards Symbols Applicable |
|---|---|---|
| SCHEDULED | | P-9 |

**Describe any "P-9":**

SMOKE DETECTORS IN EACH UNIT.

**A.** This insurance will be automatically suspended at the involved location if you fail to notify us immediately when you:

   **1.** Know of any suspension or impairment in the protective safeguards; or

   **2.** Fail to maintain the protective safeguards over which you have control in complete working order.

   If part of an Automatic Sprinkler System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

**B.** The protective safeguards to which this endorsement applies are identified by the following symbols:

   **"P-1" Automatic Sprinkler System,** including related supervisory services.

   Automatic Sprinkler System means:

   **a.** Any automatic fire protective or extinguishing system, including connected:

   **(1)** Sprinklers and discharge nozzles;

   **(2)** Ducts, pipes, valves and fittings;

   **(3)** Tanks, their component parts and supports; and

   **(4)** Pumps and private fire protection mains.

   **b.** When supplied from an automatic fire protective system:

   **(1)** Non-automatic fire protective systems; and

   **(2)** Hydrants, standpipes and outlets.

   **"P-2" Automatic Fire Alarm,** protecting the entire building, that is:

   **a.** Connected to a central station; or

   **b.** Reporting to a public or private fire alarm station.

   **"P-3" Security Service,** with a recording system or watch clock, making hourly rounds covering the entire building, when the premises are not in actual operation.

   **"P-4" Service Contract** with a privately owned fire department providing fire protection service to the described premises.

   **"P-9"** The protective system described in the Schedule.

*Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

CERTIFIED COPY

CP 12 10 11 85          Copyright, ISO Commercial Risk Services, Inc., 1983          HA:BRHOA:POL0052



# IMPORTANT NOTICE FOR FLORIDA POLICYHOLDERS

IN THE EVENT YOU NEED TO CONTACT SOMEONE ABOUT THIS POLICY, PLEASE CONTACT YOUR AGENT.
If you have additional questions, you may contact The Hartford at the address stated below.

SERVICING OFFICE:   FIRST STATE MANAGEMENT GROUP, INC.
50 GLENLAKE PARKWAY, SUITE 250
ATLANTA, GEORGIA 30328
(770) 730-3520

Written correspondence is preferable so that a record of your inquiry is maintained.

**PLEASE BE SURE TO INCLUDE YOUR POLICY NUMBER IN ANY CORRESPONDENCE.**

HA:BRHOA:POL0053

Form XP 99 11 11 93   Printed in U.S.A. (NS)

# EXHIBIT "2"

POLICY NO. ZG 0631384
SEE ATTACHED Schedule
AMOUNT OF POLICY AT TIME OF LOSS

**SWORN STATEMENT**
**IN**
**PROOF OF LOSS**

FILE NO. 3068758
COMPANY CLAIM NO.
AGENT THOMAS W. EGAN

DATE ISSUED: JUNE 15, 2005
DATE EXPIRES: JUNE 15, 2006

AGENCY AT

To the PACIFIC INSURANCE COMPANY limited

of HARTFORD, CT

At time of loss, by the above indicated policy of insurance, you insured

BOCA RANCH A.K.A. AVIARA H.O.A.
BOCA RATON Florida

against loss by ALL-RISK ... the property described according to the terms and conditions of said policy and of all forms, endorsements, transfers and assignments attached thereto.

TIME AND ORIGIN: A WINDSTORM — HURRICANE WILMA loss occurred about the hour of ___ o'clock ___ M. on the 24 day of OCTOBER 2005 the cause and origin of the said loss were:

OCCUPANCY: HURRICANE Wilma caused Damage to Insured Property. The building described, or containing the property described, was occupied at the time of the loss as follows, and for no other purpose whatever: Homeowners' ASSOCIATION

TITLE AND INTEREST: At the time of the loss the interest of your insured in the property described therein was ASSOCIATION OWNED. No other person or persons had any interest therein or incumbrance thereon, except: (NONE)

CHANGES: Since the said policy was issued there has been no assignment thereof, or change of interest, use, occupancy, possession, location or exposure of the property described, except: (NONE)

TOTAL INSURANCE: The total amount of insurance upon the property described by this policy was, at the time of the loss, $10,519,650.00 as more particularly specified in the apportionment attached, besides which there was no policy or other contract of insurance, written or oral, valid or invalid.

VALUE: The actual cash value of said property at the time of the loss was ... $10,519,650.00

LOSS: The whole loss and damage was ... $1,533,201.62

AMOUNT CLAIMED: The amount claimed under the above numbered policy is ... $1,533,201.62

APPORTIONMENT OF AMOUNTS: The said loss did not originate by any act, design or procurement on the part of your insured, or this affiant; nothing has been done by or with the privity or consent of your insured or this affiant, to violate the conditions of the policy, or render it void; no articles are mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss; no property saved has in any manner been concealed, and no attempt to deceive the said company, as to the extent of said loss, has in any manner been made. Any other information that may be required will be furnished and considered a part of this proof.

The furnishing of this blank or the preparation of proofs by a representative of the above insurance company is not a waiver of any of its rights.

State of FLORIDA
County of BROWARD

*D. Joseph Ollis* (signature)

Subscribed and sworn to before me this 19 day of MARCH 2008

(signature)

Form recommended by the American Insurance Association

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD OR DECEIVE ANY INSURANCE COMPANY FILES A STATEMENT OF CLAIM CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION IS GUILTY OF A THIRD DEGREE ...

HA:BOL:EUO:00222



**D F GUARACINO**
MY COMMISSION # DD750382
EXPIRES January 21, 2012
(407) 398-0153     FloridaNotaryService.com



**EXHIBIT**
**2**

# EXHIBIT "3"

*Certified Mail - Return Receipt Requested*
*#7007 1490 0001 1578 3568*

April 16, 2008

Hurricane Action Legal Team P.A.
Attn: Scott Fistel, Esq
10200 W State Road 84, Suite 102
Davie, Florida 33324

      RE:    BOCA RANCHO HOMEOWNERS ASSOCIATION ("Insured")
              Claim No.   :     3068758
              D/O/L      :     10/24/05

Dear Mr. Fistel:

    We are writing on behalf of Pacific Insurance Company, Ltd. ("Pacific") with respect to the Sworn Proof of Loss ("Proof") submitted on March 19, 2008. Pacific hereby rejects the Proof in that it contains errors and can not be verified. In addition to issues within the Proof itself, Pacific requires additional information to more thoroughly evaluate the loss claimed. Initially, the Insured values "THE WHOLE LOSS AND DAMAGE" as $1,533,201.62. It also seeks the amount of $1,533,201.62 as the amount due under the insurance policy. Thus, the Proof does not consider application of the appropriate deductible under Pacific's insurance policy.

    In addition and by way of further example, the Proof also seeks recovery for damage to fencing, yet Pacific's policy only provides limited coverage for only certain fencing and it cannot be determined what is being sought in the Proof. Pacific's insurance policy also contains a wood joisted roof exclusion and it cannot be determined whether or not any of the costs submitted in the Proof relate to roof repairs that would be precluded by this exclusion. These are only several outstanding issues that require clarification.

    Accordingly, to more thoroughly consider the Proof and to continue the investigation of this claim, Pacific requires additional documentation of the damage and repairs; an additional inspection of the premises; and the Examination Under Oath ("EUO") of the Insured's representative. Pacific's counsel in this matter is Joseph R. Miele, Jr., Esquire, Marshall, Dennehey, Warner, Coleman & Goggin, One East Broward Boulevard, Suit 500, Fort Lauderdale, Florida 33301. Mr. Miele will forward to your counsel a list of additional documents which are needed and he will contact your counsel to arrange for the inspection and EUO.



EXHIBIT
3



**ASSOCIATES**

Page 2
Hurricane Action Legal Team P.A

*BOCA RANCHO HOMEOWNERS ASSOCIATION*

Boca Raton
1001 Yamato Road
Suite 402
Boca Raton, Fl. 33431-4403
Phone
(561) 995-8244
Fax
(561) 995-0129
Email
boca@cjw-assoc.com
Web
www.cjw-assoc.com

Should you have any questions in the interim, please feel free to contact me.

Very truly yours,

Jeffrey C. Higgins,

Executive General Adjuster

Branch Offices
Asheville
Atlanta
Boca Raton
Brownsville
Charleston
Ft. Myers
Ft. Pierce
Houston
Jacksonville
Miami
Myrtle Beach
Orlando
Pensacola
Phoenix
Tampa
Tyler

*The Art of Adjusting™*

▲



## SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Hurricane Action Legal Team P.A
Attn: Scott Fistel, Esq
10200 W State Road 84, Suite 102
Davie, Florida 33324

## COMPLETE THIS SECTION ON DELIVERY

A. Signature

X _VBrady_    ☐ Agent
              ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
                                 12/21/09

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
   ☑ Certified Mail   ☐ Express Mail
   ☐ Registered       ☑ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)
   7007 1490 0001 1578 3568

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

# EXHIBIT "4"

A REGION· DEFENSE LITIGATION LAW FIRM

## MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN

A PROFESSIONAL CORPORATION   www.marshalldennehey.com

PENNSYLVANIA
Bethlehem
Doylestown
Erie
Harrisburg
King of Prussia
Philadelphia
Pittsburgh
Scranton
Williamsport

NEW JERSEY
Cherry Hill
Roseland

DELAWARE
Wilmington

OHIO
Akron

FLORIDA
Ft. Lauderdale
Jacksonville
Orlando
Tampa

1 East Broward Boulevard, Suite 500 · Ft. Lauderdale, FL 33301
(954) 847-4920 · Fax (954) 627-6640

Direct Dial: 954-847-4921
Email: mapacker@mdwcg.com



September 3, 2008

**BY FACSIMILE (954-522-1249) AND MAIL**

Scott Fistel, Esq.
The Hurricane Action Legal Team P.A.
10200 W. State Rd. 84  Suite 102
Davie, FL  33324

RE:   BOCA RANCHO HOMEOWNERS ASSOCIATION
D/O/L        :        10/24/05
Our File No.  :        08009.00160

Dear Mr. Fistel:

Please allow this correspondence to follow up the Examination Under Oath ("EUO") of Joseph Digilio on behalf of Boca Rancho Homeowners Association ("Boca Rancho"). At that time, we identified a number of documents pertinent to Pacific Insurance Company, Ltd.'s ("Pacific") investigation of the claim which remain outstanding.

Accordingly, Pacific requests that Boca Rancho provide it with the following materials as soon as possible:

- All documents, including but not limited to invoices pertaining to work performed for the Association by Payton Roofing;

- All documents, including but not limited to invoices pertaining to work performed for the Association by Foam King;

- All documents, including but not limited to invoices pertaining to work performed for the Association by Cool Team;



EXHIBIT
4

Scott Fistel, Esq.
September 3, 2008

- All documents, including but not limited to invoices pertaining to work performed for the Association by HDL Lighting;

- All documents, including but not limited to invoices pertaining to work performed for the Association by Island Construction;

- All documents, including but not limited to invoices pertaining to work performed for the Association by the company hired to cut down trees that was paid approximately $7,000;

- All engineering reports/documents prepared or relied upon by the engineer hired by or on behalf of the Association to determine whether roofs needed to be replaced or repaired (name unknown)

- All documents, including but not limited to invoices pertaining to work performed for the Association by the company that replaced roofs on all thirty (30) buildings from 1990 to 1995;

- All documents, including but not limited to invoices pertaining to work performed for the Association by the sprinkler company hired after Hurricane Wilma (name unknown; on-site vendor);

- All documents, including but not limited to invoices pertaining to work performed for the Association by air conditioning company hired to repair defective work on four (4) buildings worked on by Payton Roofing (name unknown);

- Video of hurricane damage to Association taken by Adrianne March approximately 5-6 days after hurricane;

- All documents, including but not limited to invoices pertaining to work performed for the Association by Diversified Landscaping Company;

- Contract between Federal (current property management co.) and Association;

- Contract between CAS (former property management co.) and Association;

- All Association Meeting minutes for January 1, 2004 through the present;

- Association By-Laws; and

- Maintenance records for the Association from January 1, 2003 through the present.

No further action may be taken on the claim until the above requested documents have been produced. Any failure to provide the requested records and documents or any other failure to cooperate with Pacific may constitute a material breach of a policy condition potentially jeopardizing coverage for the claim under the policy.

2

Scott Fistel, Esq.
September 3, 2008

Pacific Insurance Company Ltd. is reserving all rights and privileges it may have under the subject policy and under the laws of Florida, including whether coverage exists for the subject loss.

Should you have any questions or comments regarding the foregoing, please do not hesitate to contact me.

Very truly yours,

Michael A. Packer

MAP:clw

22/182197.v1

3

# EXHIBIT "5"

---

## MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN

A   P R O F E S S I O N A L   C O R P O R A T I O N   **www.marshalldennehey.com**

PENNSYLVANIA
Bethlehem
Doylestown
Erie
Harrisburg
King of Prussia
Philadelphia
Pittsburgh
Scranton
Williamsport

NEW JERSEY
Cherry Hill
Roseland

DELAWARE
Wilmington

OHIO
Akron

FLORIDA
Ft. Lauderdale
Jacksonville
Orlando
Tampa

**1 East Broward Boulevard, Suite 500 · Ft. Lauderdale, FL 33301**
**(954) 847-4920 · Fax (954) 627-6640**

**Direct Dial: 954-847-4921**
**Email: mapacker@mdwcg.com**



October 21, 2008

**BY FACSIMILE (954-522-1249) AND MAIL**

Scott Fistel, Esq.
The Hurricane Action Legal Team P.A.          **SECOND REQUEST**
10200 W. State Rd. 84  Suite 102
Davie, FL  33324

RE:   BOCA RANCHO HOMEOWNERS ASSOCIATION
      D/O/L         :      10/24/05
      Our File No.  :      08009.00160

Dear Mr. Fistel:

Please allow this correspondence to follow up as a courtesy, my September 3, 2008 letter, for which I have received no response. As you may recall, at the Examination Under Oath ("EUO") of Joseph Digilio on behalf of Boca Rancho Homeowners Association ("Boca Rancho"), we identified a number of documents pertinent to Pacific Insurance Company, Ltd.'s ("Pacific") investigation of the claim which remain outstanding.

Accordingly and once again, Pacific requests that Boca Rancho provide it with the following materials as soon as possible:

- All documents, including but not limited to invoices pertaining to work performed for the Association by Payton Roofing;

- All documents, including but not limited to invoices pertaining to work performed for the Association by Foam King;

- All documents, including but not limited to invoices pertaining to work performed for the Association by Cool Team;



EXHIBIT
5

Scott Fistel, Esq.
October 21, 2008

- All documents, including but not limited to invoices pertaining to work performed for the Association by HDL Lighting;

- All documents, including but not limited to invoices pertaining to work performed for the Association by Island Construction;

- All documents, including but not limited to invoices pertaining to work performed for the Association by the company hired to cut down trees that was paid approximately $7,000;

- All engineering reports/documents prepared or relied upon by the engineer hired by or on behalf of the Association to determine whether roofs needed to be replaced or repaired (name unknown)

- All documents, including but not limited to invoices pertaining to work performed for the Association by the company that replaced roofs on all thirty (30) buildings from 1990 to 1995;

- All documents, including but not limited to invoices pertaining to work performed for the Association by the sprinkler company hired after Hurricane Wilma (name unknown; on-site vendor);

- All documents, including but not limited to invoices pertaining to work performed for the Association by air conditioning company hired to repair defective work on four (4) buildings worked on by Payton Roofing (name unknown);

- Video of hurricane damage to Association taken by Adrianne March approximately 5-6 days after hurricane;

- All documents, including but not limited to invoices pertaining to work performed for the Association by Diversified Landscaping Company;

- Contract between Federal (current property management co.) and Association;

- Contract between CAS (former property management co.) and Association;

- All Association Meeting minutes for January 1, 2004 through the present;

- Association By-Laws; and

- Maintenance records for the Association from January 1, 2003 through the present.

As you have been previously advised on a number of occasions, no further action may be taken on the claim until the above requested documents have been produced. The continued failure to provide the requested records and documents or any other failure to cooperate with

Scott Fistel, Esq.
October 21, 2008

Pacific may constitute a material breach of a policy condition potentially jeopardizing coverage for the claim under the policy.

      Pacific Insurance Company Ltd. is reserving all rights and privileges it may have under the subject policy and under the laws of Florida, including whether coverage exists for the subject loss.

      Should you have any questions or comments regarding the foregoing, please do not hesitate to contact me.

                  Very truly yours,

                  Michael A. Packer

MAP:clw

22/190788.v1

3

# EXHIBIT "6"

A REGIONAL DEFENSE LITIGATION LAW FIRM

## MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN

A  PROFESSIONAL  CORPORATION    www.marshalldennehey.com

PENNSYLVANIA
Bethlehem
Doylestown
Erie
Harrisburg
King of Prussia
Philadelphia
Pittsburgh
Scranton
Williamsport

NEW JERSEY
Cherry Hill
Roseland

DELAWARE
Wilmington

OHIO
Akron

FLORIDA
Ft. Lauderdale
Jacksonville
Orlando
Tampa

**1 East Broward Boulevard, Suite 500 · Ft. Lauderdale, FL 33301**
**(954) 847-4920 · Fax (954) 627-6640**

**Direct Dial: 954-847-4921**
**Email: mapacker@mdwcg.com**

December 15, 2008

MDW
C&G
ATTORNEYS-AT-LAW

**BY FACSIMILE (954-522-1249) AND MAIL**

Scott Fistel, Esq.
The Hurricane Action Legal Team P.A.
10200 W. State Rd. 84  Suite 102
Davie, FL  33324

RE:  BOCA RANCHO HOMEOWNERS ASSOCIATION: Hurricane Claim
     D/O/L         :     10/24/05
     Our File No.  :     08009.00160

Dear Mr. Fistel:

As you may recall, this firm represents Pacific Insurance Company, Ltd. ("Pacific") in regard to the above-referenced matter. This correspondence shall follow up our letters of September 3, 2008 and October 21, 2008 (for which we have enclosed copies of said letters for your convenience), for which we have received no response. At this point in time, based on the lack response, Pacific Insurance Company, Ltd. presumes that your client Boca Rancho Homeowners Association no longer wishes to pursue its claim for insurance benefits for property damage it claims was caused by Hurricane Wilma. Unless we hear otherwise from you in the next thirty (30) days, Pacific will close our file.

Pacific continues to reserve all rights and privileges it may have under its policy and under the laws of Florida, including whether coverage exists in whole or in part for the subject loss.

Should you have any questions or comments regarding the foregoing, please do not hesitate to contact me.

Very truly yours,

Michael A. Packer

MAP:cw

Enc.

22/202853.v1

**EXHIBIT**
**6**

A R E G I O N A L  D E F E N S E  L I T I G A T I O N  L A W  F I R M

# MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN

A  P R O F E S S I O N A L  C O R P O R A T I O N  **www.marshalldennehey.com**

PENNSYLVANIA
Bethlehem
Doylestown
Erie
Harrisburg
King of Prussia
Philadelphia
Pittsburgh
Scranton
Williamsport

NEW JERSEY
Cherry Hill
Roseland

DELAWARE
Wilmington

OHIO
Akron

FLORIDA
Ft. Lauderdale
Jacksonville
Orlando
Tampa

**1 East Broward Boulevard, Suite 500 · Ft. Lauderdale, FL 33301**
**(954) 847-4920 · Fax (954) 627-6640**

**Direct Dial: 954-847-4921**
**Email: mapacker@mdwcg.com**



September 3, 2008

**BY FACSIMILE (954-522-1249) AND MAIL**

Scott Fistel, Esq.
The Hurricane Action Legal Team P.A.
10200 W. State Rd. 84  Suite 102
Davie, FL  33324

       RE:   BOCA RANCHO HOMEOWNERS ASSOCIATION
            D/O/L      :     10/24/05
            Our File No.  :     08009.00160

Dear Mr. Fistel:

     Please allow this correspondence to follow up the Examination Under Oath ("EUO") of Joseph Digilio on behalf of Boca Rancho Homeowners Association ("Boca Rancho"). At that time, we identified a number of documents pertinent to Pacific Insurance Company, Ltd.'s ("Pacific") investigation of the claim which remain outstanding.

     Accordingly, Pacific requests that Boca Rancho provide it with the following materials as soon as possible:

- All documents, including but not limited to invoices pertaining to work performed for the Association by Payton Roofing;

- All documents, including but not limited to invoices pertaining to work performed for the Association by Foam King;

- All documents, including but not limited to invoices pertaining to work performed for the Association by Cool Team;

Scott Fistel, Esq.
September 3, 2008

- All documents, including but not limited to invoices pertaining to work performed for the Association by HDL Lighting;

- All documents, including but not limited to invoices pertaining to work performed for the Association by Island Construction;

- All documents, including but not limited to invoices pertaining to work performed for the Association by the company hired to cut down trees that was paid approximately $7,000;

- All engineering reports/documents prepared or relied upon by the engineer hired by or on behalf of the Association to determine whether roofs needed to be replaced or repaired (name unknown)

- All documents, including but not limited to invoices pertaining to work performed for the Association by the company that replaced roofs on all thirty (30) buildings from 1990 to 1995;

- All documents, including but not limited to invoices pertaining to work performed for the Association by the sprinkler company hired after Hurricane Wilma (name unknown; on-site vendor);

- All documents, including but not limited to invoices pertaining to work performed for the Association by air conditioning company hired to repair defective work on four (4) buildings worked on by Payton Roofing (name unknown);

- Video of hurricane damage to Association taken by Adrianne March approximately 5-6 days after hurricane;

- All documents, including but not limited to invoices pertaining to work performed for the Association by Diversified Landscaping Company;

- Contract between Federal (current property management co.) and Association;

- Contract between CAS (former property management co.) and Association;

- All Association Meeting minutes for January 1, 2004 through the present;

- Association By-Laws; and

- Maintenance records for the Association from January 1, 2003 through the present.

No further action may be taken on the claim until the above requested documents have been produced. Any failure to provide the requested records and documents or any other failure to cooperate with Pacific may constitute a material breach of a policy condition potentially jeopardizing coverage for the claim under the policy.

2

Scott Fistel, Esq.
September 3, 2008

      Pacific Insurance Company Ltd. is reserving all rights and privileges it may have under the subject policy and under the laws of Florida, including whether coverage exists for the subject loss.

      Should you have any questions or comments regarding the foregoing, please do not hesitate to contact me.

                Very truly yours,

                Michael A. Packer

MAP:clw

22/182197.v1

3

A REGIONAL DEFENSE LITIGATION LAW FIRM

| **MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN** |
| --- |

A  P R O F E S S I O N A L   C O R P O R A T I O N      www.marshalldennehey.com

**PENNSYLVANIA**
Bethlehem
Doylestown
Erie
Harrisburg
King of Prussia
Philadelphia
Pittsburgh
Scranton
Williamsport

**NEW JERSEY**
Cherry Hill
Roseland

**DELAWARE**
Wilmington

**OHIO**
Akron

**FLORIDA**
Ft. Lauderdale
Jacksonville
Orlando
Tampa

1 East Broward Boulevard, Suite 500 · Ft. Lauderdale, FL 33301
(954) 847-4920 · Fax (954) 627-6640

**Direct Dial: 954-847-4921**
**Email: mapacker@mdwcg.com**



October 21, 2008

**BY FACSIMILE (954-522-1249) AND MAIL**

Scott Fistel, Esq.
The Hurricane Action Legal Team P.A.                     **SECOND REQUEST**
10200 W. State Rd. 84  Suite 102
Davie, FL  33324

     RE:    BOCA RANCHO HOMEOWNERS ASSOCIATION
           D/O/L      :      10/24/05
           Our File No.  :      08009.00160

Dear Mr. Fistel:

     Please allow this correspondence to follow up as a courtesy, my September 3, 2008 letter, for which I have received no response. As you may recall, at the Examination Under Oath ("EUO") of Joseph Digilio on behalf of Boca Rancho Homeowners Association ("Boca Rancho"), we identified a number of documents pertinent to Pacific Insurance Company, Ltd.'s ("Pacific") investigation of the claim which remain outstanding.

     Accordingly and once again, Pacific requests that Boca Rancho provide it with the following materials as soon as possible:

- All documents, including but not limited to invoices pertaining to work performed for the Association by Payton Roofing;

- All documents, including but not limited to invoices pertaining to work performed for the Association by Foam King;

- All documents, including but not limited to invoices pertaining to work performed for the Association by Cool Team;

Scott Fistel, Esq.
October 21, 2008

- All documents, including but not limited to invoices pertaining to work performed for the Association by HDL Lighting;

- All documents, including but not limited to invoices pertaining to work performed for the Association by Island Construction;

- All documents, including but not limited to invoices pertaining to work performed for the Association by the company hired to cut down trees that was paid approximately $7,000;

- All engineering reports/documents prepared or relied upon by the engineer hired by or on behalf of the Association to determine whether roofs needed to be replaced or repaired (name unknown)

- All documents, including but not limited to invoices pertaining to work performed for the Association by the company that replaced roofs on all thirty (30) buildings from 1990 to 1995;

- All documents, including but not limited to invoices pertaining to work performed for the Association by the sprinkler company hired after Hurricane Wilma (name unknown; on-site vendor);

- All documents, including but not limited to invoices pertaining to work performed for the Association by air conditioning company hired to repair defective work on four (4) buildings worked on by Payton Roofing (name unknown);

- Video of hurricane damage to Association taken by Adrianne March approximately 5-6 days after hurricane;

- All documents, including but not limited to invoices pertaining to work performed for the Association by Diversified Landscaping Company;

- Contract between Federal (current property management co.) and Association;

- Contract between CAS (former property management co.) and Association;

- All Association Meeting minutes for January 1, 2004 through the present;

- Association By-Laws; and

- Maintenance records for the Association from January 1, 2003 through the present.

As you have been previously advised on a number of occasions, no further action may be taken on the claim until the above requested documents have been produced. The continued failure to provide the requested records and documents or any other failure to cooperate with

Scott Fistel, Esq.
October 21, 2008

Pacific may constitute a material breach of a policy condition potentially jeopardizing coverage for the claim under the policy.

Pacific Insurance Company Ltd. is reserving all rights and privileges it may have under the subject policy and under the laws of Florida, including whether coverage exists for the subject loss.

Should you have any questions or comments regarding the foregoing, please do not hesitate to contact me.

Very truly yours,

Michael A. Packer 

MAP:clw

22/190788.v1

3

# EXHIBIT "7"

A REGION   DEFENSE LITIGATION LAW FIRM

## MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN

A PROFESSIONAL CORPORATION   www.marshalldennehey.com

PENNSYLVANIA
Bethlehem
Doylestown
Erie
Harrisburg
King of Prussia
Philadelphia
Pittsburgh
Scranton
Williamsport

NEW JERSEY
Cherry Hill
Roseland

DELAWARE
Wilmington

OHIO
Akron

FLORIDA
Ft. Lauderdale
Jacksonville
Orlando
Tampa

**1 East Broward Boulevard, Suite 500 · Ft. Lauderdale, FL 33301**
**(954) 847-4920 · Fax (954) 627-6640**

**Direct Dial: 954-847-4921**
**Email: mapacker@mdwcg.com**



February 9, 2009

**BY FACSIMILE (954-522-1249) AND MAIL**

Scott Fistel, Esq.
The Hurricane Action Legal Team P.A.
10200 W. State Rd. 84  Suite 102
Davie, FL  33324

      RE:    BOCA RANCHO HOMEOWNERS ASSOCIATION
                 D/O/L       :       10/24/05
                 Our File No.  :       08009.00160

Dear Mr. Fistel:

      As you know, our office has been retained to assist Pacific Insurance Company, Ltd. ("Pacific") in its evaluation of the above-captioned claim. On behalf of Pacific, we have written your office on a number of occasions to request certain documents that Pacific requires in order to evaluate your client, Boca Rancho Homeowners Association's ("Boca Rancho") claim. This claim was reported to Pacific more than two (2) years after Hurricane Wilma ("Wilma") made landfall in South Florida. Pacific has now had an opportunity to thoroughly examine the additional materials your office provided on November 13, 2008. Unfortunately once again, Boca Rancho has largely failed to comply with Pacific's request for documents in support of its claim. The documents produced by Boca Rancho through your office on November 13, 2008, raise additional questions. Namely, what roof work was Boca Rancho considering prior to Wilma.

      During the Examination Under Oath ("EUO") of Joseph Digilio, President and representative of Boca Rancho, numerous documents were identified which are pertinent to Pacific's investigation of the claim. Most of these documents remain outstanding. By way of example, an invoice and retainer check for John Hosford Roof Consultants, Inc. was provided, yet not contract, report or explanation of the services to be provided by John Hosford Roof Consultants, Inc. Another example of Boca Rancho's failure to provide the requested



**EXHIBIT**

**7**

Scott Fistel, Esq.
February 9, 2009

documentation is its failure to provide copies of all Association Meeting minutes for January 1, 2004 through the present. As I am sure you are aware, Florida Statute §720.303(4)(f) requires these documents to be retained by the Association for a minimum of seven (7) years.

To the extent you feel there may be another individual better suited to represent Boca Rancho as it pertains to the relevant issues other than Joseph Digilio, I am happy to schedule an EUO of that person.

Notwithstanding, once again Pacific requests that Boca Rancho provide it with the following materials as soon as possible:

- All documents, including but not limited to invoices pertaining to work performed for the Association by Payton Roofing;

- All documents, including but not limited to invoices pertaining to work performed for the Association by Cool Team;

- All documents, including but not limited to reports, contracts, invoices, memoranda pertaining to services performed by John Hosford Roof Consultants, Inc.

- All documents, including but not limited to invoices pertaining to work performed for the Association by Island Construction;

- All engineering reports/documents prepared or relied upon by the engineer hired by or on behalf of the Association to determine whether roofs needed to be replaced or repaired (name unknown)

- All documents, including but not limited to invoices pertaining to work performed for the Association by the company that replaced roofs on all thirty (30) buildings from 1990 to 1995;

- All documents, including but not limited to invoices pertaining to work performed for the Association by air conditioning company hired to repair defective work on four (4) buildings worked on by Payton Roofing (name unknown);

- All Association Meeting minutes for January 1, 2004 through the present;

- All documents submitted by Boca Rancho in order to obtain the loan to perform repairs following Wilma as testified to by Joseph Digilio; and

- Maintenance records for the Association from January 1, 2003 through the present.

In addition to the above, you have provided a number of documents related to landscaping, irrigation, patio redirections, as well as other maintenance and operational expenses incurred in 2008. There is no documentation, however, in support of your contention that this

2

Scott Fistel, Esq.
February 9, 2009

work is related to damage sustained during Wilma. Please provide any documentation or explanation you have which would address these expenses relation to alleged damage sustained during Wilma.

Please be advised that the above list of requested items should not be considered a complete list as additional documents and materials may be necessary once your client has complied with this request and we have had an opportunity to review and analyze the submission.

As you have been previously advised on a number of occasions, no further action may be taken on the claim until the above requested documents have been produced. These documents were requested by our office on June 10, 2008 and the majority of the requested documents are required to be retained by the Association for a minimum of seven (7) years pursuant to Florida Statute §720.303. The continued failure to provide the requested records and documents or any other failure to cooperate with Pacific may constitute a material breach of a policy condition potentially jeopardizing coverage for the claim under the policy.

Pacific Insurance Company Ltd. is reserving all rights and privileges it may have under the subject policy and under the laws of Florida, including whether coverage exists for the subject loss.

Should you have any questions or comments regarding the foregoing, please do not hesitate to contact me.

Very truly yours,

Michael A. Packer

MAP:clw

22/212473.v1

3

# EXHIBIT "8"

A REGIONAL DEFENSE LITIGATION LAW FIRM

## MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN

A PROFESSIONAL CORPORATION    www.marshalldennehey.com

PENNSYLVANIA
Bethlehem
Doylestown
Erie
Harrisburg
King of Prussia
Philadelphia
Pittsburgh
Scranton
Williamsport

NEW JERSEY
Cherry Hill
Roseland

DELAWARE
Wilmington

OHIO
Akron

FLORIDA
Ft. Lauderdale
Jacksonville
Orlando
Tampa

1 East Broward Boulevard, Suite 500 · Ft. Lauderdale, FL 33301
(954) 847-4920 · Fax (954) 627-6640

Direct Dial: 954-847-4921
Email: mapacker@mdwcg.com



April 23, 2009

**BY FACSIMILE (954-522-1249) AND MAIL**

Scott Fistel, Esq.
The Hurricane Action Legal Team P.A.
10200 W. State Rd. 84  Suite 102
Davie, FL  33324

        RE:   BOCA RANCHO HOMEOWNERS ASSOCIATION
              D/O/L      :    10/24/05
              Our File No.  :    08009.00160

Dear Mr. Fistel:

        Please allow this correspondence to follow-up our recent telephone conversation in regard to the above-captioned claim. At that time, you indicated your office has provided all of the documents in your client's posession responsive to our numerous requests. That being said, your client, Boca Rancho Homeowners Association ("Boca Rancho") has failed to provide some very rudimentary documents which Florida Statute §720.303(4)(f) requires Boca Rancho to retain for a minimum of seven (7) years, such as copies of **all** Association Meeting minutes for January 1, 2004 through the present.

        The documents which have been requested by Pacific Insurance Company, Ltd. ("Pacific") are essential in its ability to evaluate and adjust Boca Rancho's claim which was reported to Pacific more than two (2) years after Hurricane Wilma ("Wilma") made landfall in South Florida and after most, if not all of the repairs to the property had been completed. Based on the limited materials provided to date, it is apparent that roof work which has been claimed, was contemplated prior to Wilma and Boca Rancho itself determined that the Wilma-related damage did not exceed its deductible.



EXHIBIT
**8**

Scott Fistel, Esq.
April 23, 2009

Despite the unreasonable late notice and obvious prejudice, Pacific continues to attempt to investigate and evaluate Boca Rancho's claim in good faith and in Boca Rancho's best interest. In order to continue to do so, Pacific once again requests that Boca Rancho provide it with the following materials as soon as possible:

- All documents, including but not limited to invoices pertaining to work performed for the Association by Payton Roofing;

- All documents, including but not limited to invoices pertaining to work performed for the Association by Cool Team;

- All documents, including but not limited to reports, contracts, invoices, memoranda pertaining to services performed by John Hosford Roof Consultants, Inc.

- All documents, including but not limited to invoices pertaining to work performed for the Association by Island Construction;

- All engineering reports/documents prepared or relied upon by the engineer hired by or on behalf of the Association to determine whether roofs needed to be replaced or repaired (name unknown)

- All documents, including but not limited to invoices pertaining to work performed for the Association by the company that replaced roofs on all thirty (30) buildings from 1990 to 1995;

- All documents, including but not limited to invoices pertaining to work performed for the Association by air conditioning company hired to repair defective work on four (4) buildings worked on by Payton Roofing (name unknown);

- All Association Meeting minutes for January 1, 2004 through the present;

- All documents submitted by Boca Rancho in order to obtain the loan to perform repairs following Wilma as testified to by Joseph Digilio; and

- Maintenance records for the Association from January 1, 2003 through the present.

In addition to the above, you have provided a number of documents related to landscaping, irrigation, patio redirections, as well as other maintenance and operational expenses incurred in 2008. There is no documentation, however, in support of your contention that this work is related to damage sustained during Wilma. Please provide any documentation or explanation you have which would address these expenses relation to alleged damage sustained during Wilma.

Please be advised that the above list of requested items should not be considered a complete list as additional documents and materials may be necessary once your client has

2

Scott Fistel, Esq.
April 23, 2009

complied with this request and we have had an opportunity to review and analyze the submission.

As I have previously suggested, should you feel there may be another individual better suited to represent Boca Rancho as it pertains to the relevant issues other than Joseph Digilio, I am happy to schedule an EUO of that person.

As you have been previously advised on a number of occasions, no further action may be taken on the claim until the above requested documents have been produced. These documents were initially requested by our office on June 10, 2008 and the majority of the requested documents are required to be retained by the Association for a minimum of seven (7) years pursuant to Florida Statute §720.303. The continued failure to provide the requested records and documents or any other failure to cooperate with Pacific may constitute a material breach of a policy condition potentially jeopardizing coverage for the claim under the policy.

Pacific Insurance Company Ltd. is reserving all rights and privileges it may have under the subject policy and under the laws of Florida, including whether coverage exists for the subject loss.

Should you have any questions or comments regarding the foregoing, please do not hesitate to contact me.

Very truly yours,

Michael A. Packer

MAP:lm

22/228503.v1

3

# EXHIBIT "9"

A REGION, DEFENSE LITIGATION LAW FIRM

## MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN

A PROFESSIONAL CORPORATION   **www.marshalldennehey.com**

PENNSYLVANIA
Bethlehem
Doylestown
Erie
Harrisburg
King of Prussia
Philadelphia
Pittsburgh
Scranton
Williamsport

NEW JERSEY
Cherry Hill
Roseland

DELAWARE
Wilmington

OHIO
Akron

FLORIDA
Ft. Lauderdale
Jacksonville
Orlando
Tampa

**1 East Broward Boulevard, Suite 500 · Ft. Lauderdale, FL 33301**
**(954) 847-4920 · Fax (954) 627-6640**

**Direct Dial: 954-847-4921**
**Email: mapacker@mdwcg.com**



June 1, 2009

**BY FACSIMILE (954-522-1249) AND MAIL**

Scott Fistel, Esq.
The Hurricane Action Legal Team P.A.
10200 W. State Rd. 84  Suite 102
Davie, FL  33324

       RE:    BOCA RANCHO HOMEOWNERS ASSOCIATION
                 D/O/L      :      10/24/05
                 Our File No.  :      08009.00160

Dear Mr. Fistel:

    Please allow this correspondence to follow-up my last correspondence of April 23, 2009, in regard to the above-captioned claim. Despite numerous requests by Pacific Insurance Company, Ltd. ("Pacific") for your client, Boca Rancho Homeowners Association ("Boca Rancho") to cooperate with Pacific's investigation of its claim, to date Boca Rancho has failed to provide some very rudimentary documents which Florida Statute §720.303(4)(f) requires Boca Rancho to retain for a minimum of seven (7) years, such as copies of **all** Association Meeting minutes for January 1, 2004 through the present.

    The documents which have been requested by Pacific Insurance Company, Ltd. ("Pacific") are essential in its ability to evaluate and adjust Boca Rancho's claim which was reported to Pacific more than two (2) years after Hurricane Wilma ("Wilma") made landfall in South Florida and after most, if not all of the repairs to the property had been completed. Based on the limited materials provided to date, it is apparent that roof work which has been claimed, was contemplated prior to Wilma and Boca Rancho itself determined that the Wilma-related damage did not exceed its deductible.



EXHIBIT
9

Scott Fistel, Esq.
June 1, 2009

      Despite the unreasonable late notice and obvious prejudice, Pacific continues to attempt to investigate and evaluate Boca Rancho's claim in good faith and in Boca Rancho's best interest. In order to continue to do so, Pacific once again requests that Boca Rancho provide it with the following materials as soon as possible:

- All documents, including but not limited to invoices pertaining to work performed for the Association by Payton Roofing;

- All documents, including but not limited to invoices pertaining to work performed for the Association by Cool Team;

- All documents, including but not limited to reports, contracts, invoices, memoranda pertaining to services performed by John Hosford Roof Consultants, Inc.

- All documents, including but not limited to invoices pertaining to work performed for the Association by Island Construction;

- All engineering reports/documents prepared or relied upon by the engineer hired by or on behalf of the Association to determine whether roofs needed to be replaced or repaired (name unknown)

- All documents, including but not limited to invoices pertaining to work performed for the Association by the company that replaced roofs on all thirty (30) buildings from 1990 to 1995;

- All documents, including but not limited to invoices pertaining to work performed for the Association by air conditioning company hired to repair defective work on four (4) buildings worked on by Payton Roofing (name unknown);

- All Association Meeting minutes for January 1, 2004 through the present;

- All documents submitted by Boca Rancho in order to obtain the loan to perform repairs following Wilma as testified to by Joseph Digilio; and

- Maintenance records for the Association from January 1, 2003 through the present.

      In addition to the above, you have provided a number of documents related to landscaping, irrigation, patio redirections, as well as other maintenance and operational expenses incurred in 2008. There is no documentation, however, in support of your contention that this work is related to damage sustained during Wilma. Please provide any documentation or explanation you have which would address these expenses relation to alleged damage sustained during Wilma.

      Please be advised that the above list of requested items should not be considered a complete list as additional documents and materials may be necessary once your client has

Scott Fistel, Esq.
June 1, 2009

complied with this request and we have had an opportunity to review and analyze the submission.

As I have previously suggested, should you feel there may be another individual better suited to represent Boca Rancho as it pertains to the relevant issues other than Joseph Digilio, I am happy to schedule an EUO of that person.

As you have been previously advised on a number of occasions, no further action may be taken on the claim until the above requested documents have been produced. These documents were initially requested by our office on June 10, 2008 and the majority of the requested documents are required to be retained by the Association for a minimum of seven (7) years pursuant to Florida Statute §720.303. The continued failure to provide the requested records and documents or any other failure to cooperate with Pacific may constitute a material breach of a policy condition potentially jeopardizing coverage for the claim under the policy.

Pacific Insurance Company Ltd. is reserving all rights and privileges it may have under the subject policy and under the laws of Florida, including whether coverage exists for the subject loss.

Should you have any questions or comments regarding the foregoing, please do not hesitate to contact me.

Very truly yours,

Michael A. Packer

MAP:lbm

22/238651.v1

3

# EXHIBIT "10"



**Law Office**
# HURRICANE ACTION LEGAL TEAM
**A Professional Association**

950 South Pine Island Road, Suite A-150, Plantation, Florida 33324
Phone (954) 522-1212  Fax (954) 522-1249  Email fsflaw@gmail.com
www.haltlaw.com

July 2, 2009

**BY FACSIMILE (954) 627-6640 AND MAIL**

Michael Packer
Marshall, Dennehey, Warner, Coleman & Goggin
1 East Broward Boulevard, Suite 500
Ft. Lauderdale, FL 33301

RE:   BOCA RANCHO HOMEOWNERS ASSOCIATION
D/O/L :      10/24/05
Our File No. : 08009.00160

Dear Mr. Packer:

Please be advised that we met with our client today and obtained additional documents
supplementing the documents previously sent to you.  We should have a complete response
within two weeks at which time we expect your client to complete their investigation.

We look forward to resolving this case.

Sincerely,

Scott Fistel, Esq.
The Hurricane Action Legal Team P.A.
950 South Pine Island Road, Suite A-150
Plantation, FL 33324



EXHIBIT
10

Servicing

| Ft. Lauderdale | Jacksonville | Miami | Naples | Orlando | Tallahassee | Tampa | West |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | Palm Beach | | | | |

& Surrounding Areas

# EXHIBIT "11"

A REGIONAL DEFENSE LITIGATION LAW FIRM

# MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN

A PROFESSIONAL CORPORATION          www.marshalldennehey.com

PENNSYLVANIA        DELAWARE
Bethlehem            Wilmington
Doylestown
Erie                 OHIO
Harrisburg           Akron
King of Prussia
Philadelphia         FLORIDA
Pittsburgh           Ft. Lauderdale
Scranton             Jacksonville
Williamsport         Orlando
                     Tampa
NEW JERSEY
Cherry Hill          NEW YORK
Roseland             New York

**1 East Broward Boulevard, Suite 500 · Ft. Lauderdale, FL 33301**
**(954) 847-4920 · Fax (954) 627-6640**



**Direct Dial: 954-847-4921**
**Email: mapacker@mdwcg.com**

August 3, 2009

**BY FACSIMILE (954-522-1249) AND MAIL**

Scott Fistel, Esq.
The Hurricane Action Legal Team P.A.
10200 W. State Rd. 84  Suite 102
Davie, FL  33324

RE:     BOCA RANCHO HOMEOWNERS ASSOCIATION
        D/O/L        :      10/24/05
        Our File No. :      08009.00160

Dear Mr. Fistel:

Please allow this correspondence to serve as a follow-up to your July 2, 2009 correspondence as it pertains to the above-captioned matter. At that time, you promised a complete response to the numerous requests by Pacific Insurance Company, Ltd. ("Pacific") for your client, Boca Rancho Homeowners Association ("Boca Rancho") to produce documents in support of its claim. These documents have been requested on a number of occasions since June 10, 2008.

Please advise my office as soon as possible when the "complete response" to Pacific's repeated requests can be expected.

Very truly yours,

Michael A. Packer

MAP:lbm

22/254201.v1

**EXHIBIT**
**11**

# EXHIBIT "12"

A REGIO'   DEFENSE LITIGATION LAW FIRM

**MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN**

A   P R O F E S S I O N A L   C O R P O R A T I O N      www.marshalldennehey.com

| | |
|---|---|
| **PENNSYLVANIA** | **DELAWARE** |
| Bethlehem | Wilmington |
| Doylestown | |
| Erie | **OHIO** |
| Harrisburg | Akron |
| King of Prussia | |
| Philadelphia | **FLORIDA** |
| Pittsburgh | Ft. Lauderdale |
| Scranton | Jacksonville |
| Williamsport | Orlando |
| | Tampa |
| **NEW JERSEY** | |
| Cherry Hill | **NEW YORK** |
| Roseland | New York |

1 East Broward Boulevard, Suite 500 · Ft. Lauderdale, FL 33301
(954) 847-4920 · Fax (954) 627-6640



**Direct Dial: 954-847-4921**
**Email: mapacker@mdwcg.com**

September 3, 2009

**BY FACSIMILE (954-522-1249) AND MAIL**

Scott Fistel, Esq.
The Hurricane Action Legal Team P.A.
10200 W. State Rd. 84  Suite 102
Davie, FL  33324

      RE:   BOCA RANCHO HOMEOWNERS ASSOCIATION
           D/O/L     :      10/24/05
           Our File No.  :      08009.00160

Dear Mr. Fistel:

It has now been another thirty (30) days without a response to my August 3, 2009 correspondence which was a follow-up to your July 2, 2009 correspondence as it pertains to the above-captioned matter. At that time, you promised a complete response to the numerous requests by Pacific Insurance Company, Ltd. ("Pacific") for your client, Boca Rancho Homeowners Association ("Boca Rancho") to produce documents in support of its claim.

As you know, Pacific issued insurance policy number ZG0031384 (the "Policy") to Boca Rancho which was in effect on October 24, 2005. The Policy describes the Insured's general duties in the event of a loss or damage. In the Policy, Form CP 0017 (10/00) Condominium Association Coverage Form states in section E. Loss Conditions on page 7 as more specifically 3. Duties in Event of Loss which states in relevant part as follows:

        3.      Duties in the Event of Loss or Damage

              a.      You must see that the following are done in the event of loss or
                     damage to Covered Property:

                    (1)     Notify the police if a law may have been broken.



EXHIBIT
12

Scott Fistel, Esq.
September 3, 2009

      (2)     Give us prompt notice of the loss or damage. Include a description of the property involved.

      (3)     As soon as possible, give us a description of how, when and where the loss or damage occurred.

      (4)     Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss. If feasible, set the damaged property aside and in the best possible order for examination. Also keep a record of your expenses for emergency and temporary repairs, for consideration in the settlement of the claim. This will not increase the Limit of Insurance.

      (5)     At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

      (6)     As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records. Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

      (7)     Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

      (8)     Cooperate with us in the investigation or settlement of the claim.

   b.     We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

In January 2008, Jeffrey Higgins met with you and representatives of Boca Rancho at the Insured's premises. During that inspection, Mr. Higgins requested documents in support of Boca Rancho's claim. These documents were necessary for Pacific to conduct a proper and thorough investigation of Boca Rancho's claim for which notice was provided more than two (2) years after Hurricane Wilma made landfall in South Florida. Those documents were supposed to be made available for Jeffrey Higgins' review on February 15, 2008, during Mr. Higgins' second inspection at Boca Rancho. The records, however, were not made available at that time.

2

Scott Fistel, Esq.
September 3, 2009

On March 3, 2008, Mr. Higgins again requested documents necessary for Pacific's investigation. On March 19, 2008, along with Boca Rancho's "Sworn Statement in Proof of Loss", some documents were provided in support of the $1,533,201.62 claimed. On April 16, 2008, Mr. Higgins advised your office that the document production in support of the claim was deficient and incomplete.

Following Mr. Higgins above-referenced correspondence, on June 10, 2008, our office provided you with a list of documents to be produced by Boca Rancho to Pacific. Again, in light of the two (2) year delay in reporting the claim and the fact most of the repairs had been completed, the documents were necessary and vital for Pacific to conduct its investigation. Further, the majority of the requested documents are required to be retained by the Association for a minimum of seven (7) years pursuant to Florida Statute §720.303. Documents were again requested on:

- September 3, 2008;
- October 21, 2008;
- December 15, 2008;
- February 9, 2009;
- April 22, 2009;
- June 1, 2009; and
- August 3, 2009

At this point in time, based on the lack of meaningful responses, Pacific Insurance Company, Ltd. presumes that your client Boca Rancho Homeowners Association no longer wishes to pursue its claim for alleged property damage it claims was caused by Hurricane Wilma. Unless we hear otherwise from you in the next thirty (30) days, Pacific will close its file.

Pacific continues to reserve all rights and privileges it may have under its policy and under the laws of Florida, including whether coverage exists in whole or in part for the subject loss.

Should you have any questions or comments regarding the foregoing, please do not hesitate to contact me.

Very truly yours,

Michael A. Packer

MAP:lbm

22/263566.v1

3

# EXHIBIT "13"

# MIDDAGH LAW GROUP, P.L.L.C.
### ATTORNEYS AT LAW

RICHARD K.E. MIDDAGH, ESQ.*
KURT A. VON GONTEN, ESQ.*
ROBERT C. LANE, ESQ.**
SALIMA A. VIRANI, ESQ.**
* Licensed in Florida
** Licensed in Texas

Reply to: [X] Middagh Law Firm, P.L.
8470 S. W. 8th St.
Miami, FL 33144

Phone:    (305) 232 2162
Facsimile: (305) 262 1920
Toll Free: (800) 392 4542

[ ] Middagh & Lane, P.L.L.C.
5100 Westheimer Rd, Ste 132
Houston, Texas 77056

Phone:    (832) 384 1260
Facsimile: (832) 384 1261
Toll Free: (866) 952 7085

October 28, 2009

**VIA FACSIMILE AND US MAIL**
**(954) 627 6640**

Marshall, Dennehey, Warner, Coleman & Goggin
Attn: Michael A. Packer, Esq.
1 East Broward Boulevard, Suite 500
Ft. Lauderdale, FL 33301

Re:   Insured:        Boca Rancho HOA/ Aviara Homeowners Association, Inc.
      Policy No.:      ZG0031384
      Claim No.:       3068758
      D/O/L:           10/24/2005

Dear Mr. Packer,

As of the date above, Boca Rancho HOA/Aviara Homeowners Association, Inc. has retained this law firm regarding its Hurricane Wilma claim.

On or about September 17, 2009, Boca Rancho HOA/Aviara Homeowners Association, Inc. terminated the services of Scott Fistel, Esq. of The Hurricane Action Legal Team, P.A. Accordingly, please provide the undersigned with copies of all documents pertaining to this matter to assist in furthering this claim in a timely manner.

Please contact this office directly in order to continue the settlement of this claim. If you have any questions regarding this letter, please feel free to contact the undersigned.

Sincerely,

Richard K.E. Middagh, Esq.

Cc:    Aviara Homeowners Association, Inc.

RKEM/yg



EXHIBIT
13

# EXHIBIT "14"

# MIDDAGH LAW GROUP, P.L.L.C.
## ATTORNEYS AT LAW

RICHARD K.E. MIDDAGH, ESQ. *
KURT A. VON GONTEN, ESQ. *
ROBERT C. LANE, ESQ. **
SALIMA A. VIRANI, ESQ. **

\* Licensed in Florida
** Licensed in Texas

Reply to:

MIDDAGH LAW GROUP, P.L.L.C.
[ ] 1625 Ponce de Leon Blvd., Suite 201
Coral Gables, Florida 33134
T: (305) 232-8162
F: (305) 262-1920
Toll Free: 800-392-4542

MIDDAGH & LANE, P.L.L.C.
[ ] 5433 Westheimer Rd., Suite 875
Houston, Texas 77056
T: (713) 581-7358
F: (713) 581-7359
Toll Free: 866-952-7085

December 11, 2009

**VIA FACSIMILE AND US MAIL
(954) 467 1024**

Hinshaw & Culbertson, LLP
Attn: Joseph R. Miele, Jr., Esq.
One East Broward Blvd.
Suite 1010
Ft. Lauderdale, FL 33301

Re:     Insured:       Boca Rancho HOA/ Aviara Homeowners Association, Inc.
        Policy No.:     ZG0031384
        Claim No.:      3068758
        D/O/L:          10/24/2005

Dear Mr. Miele,

As informed in our letter of October 28, 2009, Boca Rancho HOA/Aviara Homeowners Association, Inc. has retained this law firm regarding its Hurricane Wilma claim referenced above.

This correspondence is being sent to provide you with documentation requested in your letter of October 21, 2008. Please review the items below:

1. The Association is unable to locate documentation regarding Payton Roofing due to the fact Payton Roofing was a subcontracted roofer of Island Construction; therefore, no documentation was provided to the Association from Island Construction.

2. See invoice by Foam King Roofing.

3. The Association is unable to locate documentation regarding Cool Team.

4. See invoices by HDL Lightning.

5. The Association is unable to locate documentation regarding Island Construction.

6. See invoices by TLS Tree Trimming, by Bob's Landscaping and Tree and by J&M Enterprises of Broward County, Inc.

**EXHIBIT
14**

1

7.  The Association is unable to locate the engineering reports that were written prior to the loss. CAS, the former Property Management Company, was responsible for the hiring of such and the insured is unable to obtain this information from CAS.

8.  The Association keeps no records/documentation for the years 1990 to 1995.

9.  See invoice by F&S Enterprises, Inc.

10. See invoice by Southern Air Solution.

11. It is our understanding this information is in the possession of the Association's former Attorney, Scott Fistel, and such has been requested from him. Once such is received, we will forward it to you.

12. Diversified Landscaping Company cannot be located, but no part of its work is being claimed for this matter.

13. See enclosed a copy of Federal's contract.

14. See enclosed a copy of C.A.S.'s contract.

15. See copies of the Association meetings minutes enclosed.

16. See enclosed the Association's By-Laws.

17. See enclosed maintenance records from Coastline Construction and Maintenance, Inc.

18. See enclosed John Hosford Roof Consultant's invoice.

Please review the enclosed information and contact the undersigned regarding this claim's settlement. All requested information has been provided and all other policy conditions have been met; therefore, at this time we are demanding appraisal to resolve this matter. Please contact this office with your named appraiser within the applicable time. The insured has named Rick W. Middagh as its appraiser. Mr. Middagh may be reached at (305) 588-6492. If you have any questions regarding this letter, please feel free to contact the undersigned.

Sincerely, 

Richard K.E. Middagh, Esq.

Enclosures

Cc:   Aviara Homeowners Association, Inc.

RKEM/yg

2

# EXHIBIT "15"

# M MIDDAGH LAW GROUP, P.L.L.C.
## ATTORNEYS AT LAW

RICHARD K.E. MIDDAGH, ESQ.*
KURT A. VON GONTEN, ESQ *
ROBERT C. LANE, ESQ **
SALIMA A. VIRANI, ESQ **

* Licensed in Florida
** Licensed in Texas

MIDDAGH LAW GROUP, P.L.L.C.
Reply to: 9625 Ponce de Leon Blvd., Suite 201  [
Coral Gables, Florida 33134

MIDDAGH & LANE, P.L.L.C.
] 5433 Westheimer Rd., Suite 875
Houston, Texas 77056

T: (305) 230-8168
F: (305) 262-1990
Toll Free 800-392-4542

T: (713) 581-7358
F: (713) 581-7359
Toll Free: 866-952-7085

December 30, 2009

**VIA FACSIMILE AND US MAIL**
**(954) 467 1024**

Hinshaw & Culbertson, LLP
Attn: Joseph R. Miele, Jr., Esq.
One East Broward Blvd.
Suite 1010
Ft. Lauderdale, FL 33301

Re:     Insured:       Boca Rancho HOA/ Aviara Homeowners Association, Inc.
        Policy No.:    ZG0031384
        Claim No.:     3068758
        D/O/L:         10/24/2005

Dear Mr. Miele,

This letter is being sent to inform you that we have attempted, without success, to collect documentation from Cool Team Services, Inc., Payton Roofing, Inc., and from Island Builders Construction, Inc., regarding Boca Rancho HOA/Aviara Homeowners Association, Inc.'s claim.

We have enclosed for your review a copy of Cool Team's letter of December 22, 2009 in response to our request for documentation regarding this loss.

In addition, upon receipt of our request for information, Mr. Timothy Payton of Payton Roofing, Inc. contacted our office and informed us that he would forward records of any work performed by said company, if such was found. As of the date of this letter, this office has not received any documents from Payton Roofing, Inc.

Finally, it is our understanding that Island Builders Construction, Inc. is out of business. Therefore, we are not able to request such company's records regarding this matter.

Sincerely,

Richard K.E. Middagh, Esq.

Enclosures

Cc:     Aviara Homeowners Association, Inc.

RKEM/yg

**EXHIBIT**
**15**

**COOL TEAM SERVICES, INC.**
1426 Skees Road Suite E
West Palm Beach, FL 33411
Phone 1-877-317-COOL (2665)
Fax (561) 683-7140

12/22/2009

Middagh Law Group, P.L.L.C.
2625 Ponce De Leon Blvd Ste 201
Coral Gables, FL 33134

Mr. Middagh:

We searched the files and found nothing for Boca Rancho in our records. We lost some files with water damage a couple of years ago and the records must have been in those destroyed boxes.

Sorry we are unable to assist you.

Sincerely,

*Jim Eifler*

Jim Eifler
Cool Team Services, Inc.